John H. Patton, Cal. SBN 069261
Kathryn J. Allen, Cal. SBN 196544
Matthew T. Homan, Cal. SBN 250458
SHAPIRO BUCHMAN PROVINE & PATTON LLP
1333 North California Boulevard, Suite 350
Walnut Creek, CA 94596
Telephone: (925) 944-9700
Facsimile: (925) 944-9701
E-mail: jpatton@sbllp.com

Attorneys for Plaintiff and Counterdefendant
Monterey Gourmet Foods, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTEREY GOURMET FOODS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WINDSOR QUALITY FOOD COMPANY LTD., a Texas Limited Partnership; and DOES 1 through 20, inclusive,<br><br>Defendants.<br><br>———————————————<br>AND RELATED COUNTERCLAIM. | No. C08-01316 (JCS)<br><br>Case assigned for all purposes to Hon. Joseph C. Spero<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTERDEFENDANT MONTEREY GOURMET FOODS, INC.'S SPECIAL MOTION TO STRIKE COUNTERCLAIM OF WINDSOR QUALITY FOOD CO., LTD. [Cal. Code of Civ. Pro. § 425.16]**<br><br>Date: June 6, 2008<br>Time: 9:30 a.m.<br>Courtroom A (Hon. Joseph C. Spero)<br>Trial Date: Not Set<br><br>Accompanying Papers: Notice and Proposed Order; Declaration of Scott S. Wheeler; Request for Judicial Notice; Companion Motion to Dismiss |

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff and Counterdefendant Monterey Gourmet Foods, Inc. ("MGF")

respectfully submits the following memorandum of points and authorities in support of its

special motion to strike the counterclaim of Windsor Quality Food Company, Ltd.

("Windsor") pursuant to Section 425.16 of the California Code of Civil Procedure.

# TABLE OF CONTENTS

Page(s)

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   STATEMENT OF THE RELEVANT FACTS .......................................... 1

    A.    MGF's corporate history. ........................................................ 2

    B.    MGF's *Monterey Pasta Company*® trademark. ..................... 2

    C.    The term "Monterey," and its etymology. ................................ 4

    D.    Windsor's counterclaim. .......................................................... 5

III.  LEGAL ARGUMENT ........................................................................... 6

    A.    The Applicable Standard ......................................................... 6

        1.    Purpose and application of California's anti-SLAPP Statute. ........... 6

        2.    The anti-SLAPP statute applies to federal cases. ........................... 7

    B.    Application of the Standard to Windsor's Counterclaim ............................. 7

        1.    The first prong – rights of petition and free speech. ........................ 7

        2.    The second prong – the probability the claimant will prevail. ........... 9

            a.    The counterclaim is legally insufficient. ................................. 9

                i.    Windsor has not adequately pleaded fraud. .............. 9

                ii.    Windsor's fraud claim is a thinly-veiled attempt to belatedly argue geographic descriptiveness/misdescription, grounds barred by the Lanham Act. ................................................. 11

            b.    Windsor has no evidence of fraud and cannot prevail. ........ 14

            c.    Summary. .................................................................. 18

    C.    MGF is entitled to recover its legal fees. ................................ 18

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*American Humane Ass'n. v. Los Angeles Times Communications* (2001)
92 C.A.4th 1095.................................................................................... 19

*Austracan (U.S.A.) Inc. v. Neptune Orient Lines, Ltd.,* 612 F.Supp. 578
(S.D.N.Y. 1985) ....................................................................................... 1

*Birkner v. Lam* (2007) 156 C.A.4th 275............................................................ 9

*California Cooler, Inc. v. Loretto Winery, Ltd.,* 774 F.2nd 1451 (9th Cir. 1985) ............... 10

*City of Cotati v. Cashman* (2002) 29 Cal.4th 69 .................................................. 7

*Daesang Corp. v. Rhee Bros., Inc.* 2005 WL 1163142 (D. Md. 2005) ......................... 14

*eCash Technologies, Inc. v. Guagliardo,*
127 F.Supp.2nd 1069 (C.D. Cal. 2000).................................................. 9, 10, 11, 13, 18

*Equilon Enterprises, LLC v. Consumer Cause, Inc.*
(2002) 29 Cal.4th 53 ............................................................................... 6

*Evans v. Unkow* (1995) 38 C.A.4th 1490 ...................................................... 7, 15

*Forschner Group v. Arrow Trading Co.,* 30 F.3rd 348 (2nd Cir. 1994) .......................... 11

*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 C.A.4th 294................................. 7

*Imperial Tobacco Ltd., Assignee of Imperial Group PLC v.*
*Philip Morris, Inc.,* 899 F.2nd 1575 (Fed. Cir.1990), ........................................ 13

*InterPetrol Bermuda Ltd. v. Kaiser Aluminum Intern. Corp.,*
719 F.2nd 992 (9th Cir. 1983)..................................................................... 16

*Jarrow Formulas, Inc. v. LaMarche* (2002) 31 Cal.4th 728 ..................................... 6, 7

*Kraft General Foods, Inc. v. BC-USA, Inc.,*
840 F.Supp. 344 (E.D. Pa. 1993) ................................................................. 16

*Ludwig v. Superior Court* (1995) 37 C.A.4th 8 ..................................................... 8

*Metabolife Intn'l., Inc. v. Wornick,* 264 F.3rd 832 (9th Cir. 2001) ............................... 6

*Metro Pub., Ltd. v. San Jose Mercury News,* 987 F.2nd 637 (9th Cir. 1993) ................... 1

*Money Store v. Harriscorp Finance, Inc.,* 689 F.2nd 666 (7th Cir.1982) ...................... 11

*National Audubon Soc. v. Dept. of Water & Power of City of Los Angeles,*
496 F.Supp. 499 (E.D.Cal. 1980) ................................................................. 1

*Navellier v. Sletten* (2002) 29 Cal.4th 82 ........................................................... 7

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

# TABLE OF AUTHORITIES
## (continuation)

Page(s)

*Premier Medical Management Systems, Inc. v. California Ins. Guarantee* (2006) 136 C.A.4th 464 ................................................................................ 8

*Robi v. Five Platters, Inc.,* 918 F.2nd 1439 (9th Cir.1990).......................... 10, 11, 13, 18

*Rosenthal v. Great Western Fin. Securities,* 14 Cal.4th at 412 ........................... 7, 14, 15

*Rosso & Mastracco, Inc. v. Giant Food, Inc.,* 720 F.2nd 1263 (Fed.Cir.1983) ............... 11

*Scott v. Metabolife Intern., Inc.* (2003) 115 C.A.4th 404 ................................... 8

*Semegen v. Weidner,* 780 F.2nd 727 (9th Cir. 1985) ......................................... 9

*Stack v. Lobo, 903* F.Supp. 1361 (N.D. Cal. 1995) ........................................ 9

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.,* 190 F.3rd 963 (9th Cir. 1999) ................................................................ 7

*Vergos v. McNeal* (2007) 146 C.A.4th 1387, fn. 6........................................ 7, 15

*Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.,* 680 F.2nd 755 (Cust. & Pat. App. 1982) ................................................ 13

*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811 .......................... 7, 14, 15

## STATUTES

15 U.S.C. § 1052(f) ................................................................... 14, 17

15 U.S.C. § 1057(b) ...................................................................... 11

15 U.S.C. § 1058 ......................................................................... 12

15 U.S.C. § 1064 ..................................................................... 12, 17

15 U.S.C. § 1065 ..................................................................... 11, 12

15 U.S.C. § 1065(c) ...................................................................... 12

15 U.S.C. § 1115(b) ...................................................................... 12

California Code of Civil Procedure § 425.16 ........................................... 1, 6

California Code of Civil Procedure § 425.16(b)(1) ............................... 6, 7, 9, 18

California Code of Civil Procedure § 425.16(c) ........................................... 18

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

iii

# TABLE OF AUTHORITIES
## (continuation)

Page(s)

California Code of Civil Procedure § 425.16(e)(2) ....................................................... 6, 8

California Code of Civil Procedure § 425.16(e)(4) ....................................................... 6, 8

Lanham Act Section 2(f) .................................................................................................. 14

Lanham Act Section 8 ............................................................................................... 12, 17

Lanham Act Section 15 ............................................................................................. 12, 17

# OTHER AUTHORITIES

Hawes & Dwight, *Trademark Registration Practice* (Thomson/West 2007) ....... 13, 14, 18

*McCarthy on Trademarks and Unfair Competition* ............................................. 10, 11, 16

Trademark Trial and Appeal Board Manual of Procedure § 307.02 ............................. 18

Trademark Trial and Appeal Board Manual of Procedure § 309.03(c) .......................... 18

# RULES

Federal Rules of Civil Procedure, Rule 9(b) ............................................................... 9, 11

Federal Rules of Civil Procedure, Rule 12(b)(6) .............................................................. 1

Federal Rules of Evidence, Rule 201(d) ........................................................................... 1

## I.    PRELIMINARY STATEMENT

California's anti-SLAPP statute (Strategic Lawsuit Against Public Participation), Section 425.16 of the Code of Civil Procedure, was enacted for the very purpose of eliminating frivolous, tactical claims, such as that now asserted by Windsor in this case. Windsor's counterclaim attacks MGF for activity protected by that statute, petitioning (long ago) the government to register its trademark, *Monterey Pasta Company®*.  The obvious purpose behind Windsor's attack is to threaten the validity of MGF's principal trademark, the centerpiece of advertising and promotion for its food production business, for strategic advantage in this litigation.

But the anti-SLAPP statute permits MGF to expose this claim for what it is, without laboring under the tactical burden imposed by it for the duration of this lawsuit. Windsor has *no facts or evidence* to sustain its conclusory claim of fraud on the United States Patent and Trademark Office ("USPTO").  Because it does not, that claim cannot remain in this case, and should be stricken.  Simply put, Windsor cannot establish a probability that it will prevail on its fraud counterclaim in this lawsuit.[1]

## II.    STATEMENT OF THE RELEVANT FACTS

The facts pertinent to this motion are contained in the pleadings (MGF's Complaint and Windsor's counterclaim), the Declaration of Scott S. Wheeler, and in judicially noticeable facts (see MGF's accompanying Request for Judicial Notice ("RJN")).  FRE Rule 201(d).[2]  They are summarized as follows:

[1]    MGF is filing a companion motion to dismiss the counterclaim under FRCP Rule 12(b)(6), because the counterclaim does not state facts sufficient to maintain a fraud action against MGF. MGF respectfully requests this Court to reach the merits of this claim on the instant special motion to strike, obviating the need to even address whether amendment would be appropriate following dismissal.  The counterclaim should not be allowed to continue.

[2]    Under Rule 201(d) of the Federal Rules of Evidence, a court shall take judicial notice if requested by a party and supplied with the necessary information.  The court may judicially notice official acts of government agencies or departments. *See, e.g., National Audubon Soc. v. Dept. of Water & Power of City of Los Angeles,* 496 F.Supp. 499, 503 (E.D.Cal. 1980).  Similarly, judicial notice may be taken of officially maintained government publications, such as the USPTO's Trademark Electronic Search System ("TESS") and Trademark Document Retrieval ("TDR").  *See, e.g., Austracan (U.S.A.) Inc. v. Neptune Orient Lines, Ltd.,* 612 F.Supp. 578, 584-85 (S.D.N.Y. 1985).  A district court is, of course, empowered to take judicial notice of trademark registrations with the USPTO.  *Metro Pub., Ltd. v. San Jose Mercury News,* 987 F.2nd 637, 640-41 (9th Cir. 1993).

A.   **MGF's corporate history.**

Moving party MGF is now a Delaware Corporation, with its principal place of business in Salinas, Monterey County, California. [Wheeler Declaration, ¶¶ 1, 2.] Pamela Burns and Floyd and Sarah Hill started the business making hand-made pasta as a storefront on Lighthouse Avenue in Monterey in the late 1980's. The business was incorporated as Burns & Hill, Inc. ("BHI"), a California corporation, in 1989. [Item 6a, RJN.] Subsequently, BHI was amended and merged into Monterey Pasta Company ("MPC"), (first as a California corporation, and later merged into a Delaware corporation). [Items 6b, 6h, RJN.] In August of 2004, MPC changed its name to Monterey Gourmet Foods, Inc. ("MGF"). [Item 7c, RJN.]

B.   **MGF's *Monterey Pasta Company*® trademark.**

Critical to disposition of Windsor's counterclaim, is an understanding of the history of the subject mark. Windsor's counterclaim seriously mischaracterizes the public record that is available to it and to this Court about that history. Indeed, Windsor goes to great lengths *not* to cite to any of that history in its counterclaim, going so far as to state:

> "10.   Upon information and belief, nothing in the file wrapper indicates that the Examiner was informed, at any time, of the truly geographically descriptive (or in the alternative geographically misdescriptive) manner in which the terms 'Monterey Pasta Company' were used or to be used by MGF." [Counterclaim, 7:26-8:1.]

That statement is untrue, as shown below. The Court is requested to take judicial notice of the USPTO's extensive files with regard to the registration of MGF's *Monterey Pasta Company*® trademark that is attacked by Windsor's counterclaim (Registration No. 1,953,489). Those files, which are matters of public record, can be easily accessed over the internet by first visiting the USPTO's "TESS" (Trademark Electronic Search System) for Registration No. 1,953,489 (Serial No. 74802510), and then clicking on the USPTO's TDR (Trademark Document Retrieval) webpage for that particular mark. When there, one finds an impressive quantity of retrievable electronic documents that reflect the history of the application for this trademark and the USPTO's consideration of

2

1   same.  *Tellingly, Windsor's counterclaim does not reference a single such document.*

2   MGF and its predecessors have continuously used the trademark *Monterey Pasta*

3   *Company*® in commerce since the late 1980's.  [Wheeler Declaration, ¶ 8.]  Starting out

4   from the Lighthouse Avenue storefront MGF has grown and evolved into its current

5   principal location in Salinas, Monterey County, where it is a now a national producer of

6   gourmet foods, including fresh pasta and frozen one-step pasta meals.  [Wheeler

7   Declaration, ¶ ¶ 9-11.]  MGF brands many of these product lines under its *Monterey*

8   *Pasta Company*® trademark, and has done so for years.  [Wheeler Declaration, ¶¶ 3-8.;

9   Item 9, Ex. 9, RJN.]

10   The first registration, for *The Monterey Pasta Company and design*® (Reg. No.

11   1,664,278), was issued by the USPTO on November 12, 1991, in Class 30 (for fresh

12   pasta and sauces).  The application for that registration listed the applicant's (BHI)

13   address as 596 Lighthouse Ave., Monterey, CA 93940.  [Item 2, Ex. 2, RJN.]  On June

14   17, 1994, MGF's predecessor (MPC) filed the application for registration that is the

15   subject of Windsor's counterclaim (Reg. No. 1,953,489), as well as for another *Monterey*

16   *Pasta Company & design* mark (Registration No. 1,951,624).  [Exs. 1 and 3, RJN.]  As

17   the USPTO's records prove, on April 28, 1995, and in the course of considering the

18   trademark Windsor now seeks to cancel (Reg. No. 1,953,489), the USPTO received a

19   label specimen of the mark from the applicant.  [Item 5, Ex. 5, RJN.]  Page 2 of the

20   USPTO's PDF of that specimen confirms its receipt on April 28, 1995.  Page 1 of that

21   PDF shows that someone, either the applicant (MGF's predecessor, MPC) or the

22   USPTO Examiner, specifically circled the terms "Monterey, CA 93940" on the right side

23   of the specimen, *meaning that during the course of its consideration of the subject mark,*

24   *and before its registration, the USPTO's attention was drawn to the fact that the*

25   *applicant was associated with Monterey, California.* [Item 5, Ex. 5, RJN.]  This piece of

26   evidence alone, readily obtainable from public records, demonstrates that Windsor's

27   counterclaim is a hoax.  A copy of this specimen, showing the circled words "Monterey,

28   CA 93940" on the right (Ex. 5, RJN), is shown below:

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK



In January of 1996, the USPTO registered the trademark that is the subject of Windsor's counterclaim, Reg. No. 1,953,489, as *Monterey Pasta Company®*.  The application for that registration specifically claimed ownership of prior U.S. Reg. No. 1,664,278.  [Item 1, Ex. 1, RJN.]  In November of 2001, MGF filed a Combined Declaration of Use & Incontestability Under Sections 8 & 15 ("Incontestability Declaration") for this mark.  [Item 8, Ex. 8, RJN.]  The USPTO has also registered other iterations of this mark (Reg. Nos. 1,951,624 and 2,203,576, the latter of which claimed ownership of all of the prior registered marks).  [Items 3 and 4, RJN.]  All of the registrations are in Class 30 for pasta and sauces.  None of the mark themselves (as opposed to the labels) makes reference to any geographic areas, nor do any of them feature logos or depictions referencing any characteristics or features of any geographic areas.[3]  [Items 1-4, Exs. 1-4, RJN.]

### C.    The term "Monterey," and its etymology.

The word "Monterey" is of Spanish origin (Monterrei or Monterrey in Spain), and comes from the combination of the Spanish words "monte" meaning "mountain," or more broadly, "backcountry," and "rey," meaning "king."  [Items 10-12, RJN.]  The Spanish town of Monterrei, or Monterrey (modernized), is located in the wine producing region of Galicia, just north of the Portuguese border.  [Items 10, 16, 17, RJN.]  Monterrey is also the second largest urban area in Mexico (metropolitan population of 3.6 million), and the

---

[3]    Examples of how MGF uses its *Monterey Pasta Company®* mark to promote and brand its products, are easily found on MGF's website, www.montereygourmetfoods.com.  Some are attached as Exhibits to the Declaration of Scott Wheeler.

4

1　capital city of Nuevo Leon. [Item 18, RJN.] In Columbia, Monterrey is a municipality in

2　the Casanare Department. [Item 13, RJN.] In Australia, Monterey is a suburb of Sydney

3　in New South Wales. [Item 19, RJN.] In the United States, there is a Monterey village in

4　Kentucky, one in Michigan, another in Putnam County, Tennessee, towns named

5　Monterey in both Virginia and West Virginia, and another in Indiana, as well as in

6　numerous other states. All told, more than a third of the states in the U.S. have hamlets,

7　towns, or cities named "Monterey." [Items 12, 19, RJN.] And of course, there is the

8　County of Monterey, and its county seat, the City of Monterey, located on Monterey Bay,

9　here in Northern California. [Item 15, RJN.]

10　　　　According to the geographical dictionaries and encyclopedic entries, of which the

11　Court may take judicial notice, Monterey, California is associated with resort/tourist

12　activity, the home of many artists and writers, and one of the oldest cities in California,

13　founded as one of the original missions. [Items 10-15, RJN.] According to *California*

14　*Place Names* (University of California Press, 1998), it was named "Puerto de Monterey"

15　by Sebastian Vizcaino in 1602, in honor of Gaspar de Zúñiga y Acevedo, the Count of

16　Monterey, and Viceroy of New Spain (Mexico, and parts of what is now the western

17　United States), whose ancestral castle was in Monterrey, in Galicia, Spain. [Items 10,

18　16, 17, RJN.] Again the term stands for "mountain/forest of the king." [Items 10-12,

19　RJN.]

20　　　　None of the dictionaries or encyclopedic or etymological references to Monterey

21　at any location (California or otherwise) mentions any association with pastas or sauces.

22　The closest references to food products for Monterey, California, are for seafood,

23　canning, and Monterey Jack cheese. There is no allegation, indication, let alone

24　evidence, that the Monterey Bay area was or is independently known for or associated

25　with the making of pastas or sauces. [Counterclaim; Items 10-15, RJN.]

26　　　　D.　　**Windsor's counterclaim.**

27　　　　Windsor boldly acknowledges that it is now using the term "Chicken Monterey

28　Pasta" to brand some of its food products. [Ex. 1, Answer/Counterclaim.] More than 12

5

1  years after MGF's registration (and more than 16 years after the original registration),

2  and more than 6 years after MGF filed its Incontestability Declaration (Item 8, RJN),

3  which along with continuous use renders the mark incontestable, Windsor now attacks

4  MGF's *Monterey Pasta Company*® mark, registered January 30, 1996 (No. 1,953,489).

5  Its claim is that this registration was procured by alleged fraud practiced on the USPTO,

6  by allegedly failing to disclose the alleged descriptive or "alternatively," misdescriptive

7  nature of the mark during the registration process.  [Counterclaim, ¶¶ 9-11.]

8  ### III.   LEGAL ARGUMENT

9  #### A.   The Applicable Standard

10  ##### 1.   Purpose and application of California's anti-SLAPP Statute.

11  Some 15 years ago, California passed a statute designed to protect parties from

12  meritless claims arising from exercise of constitutional rights of free speech or petitioning

13  the government to act.  C.C.P. § 425.16; *Metabolife Intn'l., Inc. v. Wornick*, 264 F.3rd

14  832, 839-40 (9th Cir. 2001); *Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29

15  Cal.4th 53, 59-62.  Such claims are known as Strategic Lawsuits Against Public

16  Participation, or "SLAPP suits," and the statute is commonly referred to as the "anti-

17  SLAPP statute."  The statute allows a special motion to strike, based on the pleadings

18  and extrinsic evidence.  The Court then utilizes a 2-prong analysis to decide the motion.

19  First, the moving party must make a threshold showing that the claim arises from

20  acts in furtherance of its right to petition and/or free speech.  C.C.P. § 425.16(b)(1);

21  *Metabolife, supra,* 264 F.3rd 839-40; *Jarrow Formulas, Inc. v. LaMarche* (2002) 31 Cal.4th

22  728, 733.  Such acts in-furtherance include "any written or oral statement or writing

23  made in connection with an issue under consideration or review by a legislative,

24  executive or judicial body, or any other official proceeding authorized by law," or "any

25  other conduct in furtherance of the exercise of the constitutional right of petition . . . "

26  C.C.P. § 425.16(e)(2) and (4).  And whether the claimant actually filed the claim for the

27  purpose of chilling petitioning activity is irrelevant – there is "no additional requirement of

28  proving the plaintiff's subjective intent."  *City of Cotati v. Cashman* (2002) 29 Cal.4th 69,

1  75-76; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88. Nor need the claim *actually* chill

2  petitioning activity. *Id.* Moreover, the coverage of the anti-SLAPP statute is broad --

3  where there are multiple factual allegations in a claim, the statute applies even if only

4  one of the allegations concerns protected conduct. *Fox Searchlight Pictures, Inc. v.*

5  *Paladino* (2001) 89 C.A.4th 294, 308.

6      Once the *prima facie* showing has been made under subpart (b)(1), the burden

7  shifts to the claimant to establish a *probability* that he or she will prevail in the case.

8  C.C.P. § 425.16(b)(1); *Jarrow, supra,* 31 Cal.4th at 741. "To satisfy this prong, the

9  plaintiff must 'state[ ] and substantiate[ ] a legally sufficient claim." *Rosenthal v. Great*

10 *Western Fin. Securities,* 14 Cal.4th at 412. Put another way, the plaintiff 'must

11 demonstrate that the complaint is both legally sufficient and supported by a sufficient

12 *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by

13 the plaintiff is credited.' *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811,

14 821." *Jarrow, supra,* 31 Cal.4th at 741. To do this, the claimant's evidence must be of

15 such a quality that it would be admissible at trial. *See, e.g., Vergos v. McNeal* (2007)

16 146 C.A.4th 1387, 1394, fn. 6; *Evans v. Unkow* (1995) 38 C.A.4th 1490, 1497-98.

17      2.  The anti-SLAPP statute applies to federal cases.

18      The statute is not limited in scope or application to the California state courts.

19 California's anti-SLAPP statute primarily embodies substantive law, and thus applies to

20 federal cases. *See, e.g., United States ex rel. Newsham v. Lockheed Missiles & Space*

21 *Co.,* 190 F.3rd 963, 972-73 (9th Cir. 1999). Abundant federal cases confirm this

22 application, some of which are cited in this memorandum.

23      B.  Application of the Standard to Windsor's Counterclaim

24          1.  The first prong -- rights of petition and free speech.

25      The first prong of the anti-SLAPP analysis (C.C.P. § 425.16(b)(1), is easily met in

26 our case. The entire thrust of Windsor's counterclaim attacks petitioning activity by MGF

27 to register one of its *Monterey Pasta Company*® marks (No. 1,953,489) with the

28 USPTO. The alleged conduct falls squarely within the statute's rubric, including: "any

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other official proceeding authorized by law," or "any other conduct in furtherance of the exercise of the constitutional right of petition . . . " C.C.P. § 425.16(e)(2) and (4).

The proof is in Windsor's allegations. Paragraph 11 of its counterclaim is instructive:

> "11.    The withholding of the geographically descriptive (or in the alterative geographically misdescriptive) and merely descriptive nature of the terms 'Monterey Pasta Company' from the USPTO constitutes fraud on the USPTO because the USPTO would not have granted a trademark registration for the terms 'Monterey Pasta Company' without proof of secondary meaning. Upon information and belief, MGF would not have been able to establish that the terms 'Monterey Pasta Company' had acquired distinctiveness by June 17, 1994, the date of the application to register the terms 'Monterey Pasta Company.'"

The constitutional right to petition includes the basic act of seeking administrative action. *Premier Medical Management Systems, Inc. v. California Ins. Guarantee* (2006) 136 C.A.4th 464, 474; *see also Ludwig v. Superior Court* (1995) 37 C.A.4th 8, 19 (constitutional right to petition includes the basic act of filing litigation or otherwise seeking administrative action). That describes the conduct alleged in the counterclaim to a "T." When MGF sought to register its trademark with the USPTO back in 1994, it was petitioning the government, in an official proceeding authorized by law, to grant administrative action, the registration of its mark.

Nor is it germane to the first-prong analysis that MGF's statements to the USPTO are alleged to be false or fraudulent. That is a matter of proof, reserved for the second prong of the analysis. As one California court has noted: "Similarly here, [claimant] cannot simply allege this advertising is false and therefore exempt from the application of section 425.16. When a cause of action arises from constitutionally protected speech, section 425.16 applies *and the question of whether the speech is false must be examined when plaintiff demonstrates a probability of success on the merits.*" *Scott v. Metabolife Intern., Inc.* (2003) 115 C.A.4th 404, 420 (emphasis added).

8

Thus, it is established that MGF's activity that gives rise to its asserted liability under the counterclaim constitutes protected speech or petitioning. *See Birkner v. Lam* (2007) 156 C.A.4[th] 275, 281. The first prong of the anti-SLAPP motion (Section 425.16(b)(1) has been met. We turn to the second.

### 2. The second prong – the probability the claimant will prevail.

The second prong of the anti-SLAPP statute's analysis shifts the burden of proof over to Windsor. In order for its counterclaim to survive, it is obligated to establish that there is a probability it will prevail on its claim of fraud on the USPTO. Windsor cannot meet that burden, because no such fraud ever occurred.

### a. The counterclaim is legally insufficient.

### i. Windsor has not adequately pleaded fraud.

To begin with, Windsor hasn't even mustered enough facts to even state a claim for fraud in its pleading. FRCP Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud." It is not enough to string together a list of alleged acts or statements and then label them "fraudulent." Rather, a claimant "must include statements regarding the time place and nature of the alleged fraudulent activities, and must specifically identify what was misrepresented or concealed so as to give the opposing party notice of the particular conduct which is alleged to constitute the fraud. Merely making general conclusory allegations of fraud, and then reciting a list of neutral facts, is not sufficient." *Stack v. Lobo, 903* F.Supp. 1361, 1367 (N.D. Cal. 1995), citing *Semegen v. Weidner,* 780 F.2[nd] 727, 731 (9th Cir. 1985).

*eCash Technologies, Inc. v. Guagliardo,*127 F.Supp.2[nd] 1069 (C.D. Cal. 2000), is closely on point, a case also involving a counterclaim to cancel a trademark based on alleged fraud, and motions to dismiss and strike (anti-SLAPP). In *eCash,* the Central District Court examined a counterclaim alleging that the registrant had fraudulently concealed from the USPTO its alleged knowledge that the counterclaimant had previously used the mark. The *eCash* court noted that in the context of a trademark cancellation claim based upon alleged fraud on the USPTO, "affirmative" fraud requires

9

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

1  that each of the following elements be alleged and proven: (1) a false representation

2  regarding a material fact; (2) knowledge or belief that the representation is false

3  ("scienter"); (3) an intention to induce the listener to act or refrain from acting in reliance

4  on the misrepresentation; (4) reliance on the misrepresentation ("reasonable reliance");

5  and (5) damage proximately resulting from such reliance. *eCash, supra,* 1079 -1081,

6  citing J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:61 at

7  31-112 (2000) [hereinafter *McCarthy* ]; *Robi v. Five Platters, Inc.,* 918 F.2nd 1439, 1444

8  (9th Cir.1990).  In dismissing the fraud claim without leave to amend, the *eCash* court

9  observed that a charge of fraud in the procurement of a trademark registration is a

10  *disfavored* defense, and the party alleging fraud bears a "heavy" burden of proof. *eCash*

11  *Technologies, supra,* 127 F.Supp. at 1079, citing *McCarthy* § 31:68 at 31-119, 31-120

12  (fraud in trademark procurement, though often alleged, is seldom proven); *Robi, supra,*

13  918 F.2d at 1444.

14      Faced with these pleading requirements, what has Windsor come up with?  The

15  sum total of its allegations, *made on information and belief,* are that "the USPTO was not

16  made aware by [MGF] of the geographically descriptive (or in the alternative

17  geographically misdescriptive) nature of the term 'Monterey' during the prosecution of

18  the application." [Counterclaim, ¶ 9.][4]  *Come on.*

19      There are no allegations that MGF ever subjectively (or objectively) believed that

20  *Monterey Pasta Company®* was geographically or otherwise descriptive or mis-

21  descriptive.  "The fact that a composite phrase contains a geographic term does not

22  necessarily mean that the composite is itself a geographic designation." 2 McCarthy,

23  §14.23 (4th Ed.).  "That a term or phrase *evokes* geographic associations does not,

24  standing alone, support a finding of geographic descriptiveness." *Forschner Group v.*

25  _____

26  [4]      Windsor is playing games with trademark law in its criticism of this mark.  The mark being considered by the USPTO was not just "Monterey," but rather a *composite* mark (*Monterey Pasta Company®*), "and its validity was not judged by an examination of its parts. "Rather, the validity of a trademark is to be determined by viewing the trademark as a whole." *California Cooler, Inc. v. Loretto Winery, Ltd.,* 774 F.2nd 1451, 1455 (9th Cir. 1985). As *California Cooler* notes, quoting McCarthy, "a composite geographical mark should not be dissected into its parts to determine whether it is primarily geographical or not." *Id.*

10

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

1   *Arrow Trading Co.*, 30 F.3rd 348, 355 (2nd Cir. 1994), holding that "Swiss Army Knife" is

2   not a geographical designation (emphasis in original).  How could MGF have a duty to

3   investigate or disclose geographic descriptiveness to the USPTO if it did not itself

4   believe its mark was geographically descriptive?

5   Ordinarily, a trademark applicant has no duty to investigate or report to the

6   USPTO matters unless "clearly established" facts (not opinions) would make the

7   application materially false.  *See, e.g., eCash Technologies, Inc. v. Guagliardo,*

8   *supra,* 127 F.Supp.2nd 1069, 1079-1081 (C.D. Cal. 2000), citing McCarthy, and *Robi v.*

9   *Five Platters, Inc., supra,* 918 F.2nd 1439, 1444 (9th Cir.1990); *Rosso & Mastracco, Inc.*

10  *v. Giant Food, Inc.,* 720 F.2nd 1263, 1266 (Fed.Cir.1983); *Money Store v. Harriscorp*

11  *Finance, Inc.,* 689 F.2nd 666, 670 (7th Cir.1982).  Windsor's counterclaim alleges no

12  facts creating any duty to investigate or report, or any scienter, on the part of MGF.  No

13  *facts* are alleged by which MGF deliberately decided to conceal material information

14  from the USPTO.  What Windsor offers is only its own "spin," that *Monterey Pasta*

15  *Company*® supposedly was geographically descriptive, a spin that the USPTO obviously

16  did not share.[5]  Windsor's conclusory spin on the law is not sufficient to meet the

17  requirements to plead fraud under FRCP Rule 9(b).

18              ii.    **Windsor's fraud claim is a thinly-veiled attempt to**
              **belatedly argue geographic descriptiveness/misdescription,**
19             **grounds barred by the Lanham Act.**

20  A certificate of registration for a mark provides prima facie evidence of the validity

21  of the mark, the registration of the mark, the registrant's ownership of the mark and

22  exclusive right to use the mark in commerce. 15 U.S.C. § 1057(b).  Moreover, a mark

23  that meets certain requirements, primarily continuous use for five years after registration,

24  becomes "incontestable". 15 U.S.C. § 1065.  On November 13, 2001, MGF filed its

---

[5]    Again, "that a term or phrase *evokes* geographic associations does not, standing alone, support a finding of geographic descriptiveness." *Forschner Group v. Arrow Trading Co.,* 30 F.3rd 348, 355 (2nd Cir. 1994).  The bald allegation of geographic descriptiveness does not sufficiently allege it, let alone prove it, nor does it prove that the USPTO should have or would have agreed, or that it did not disagree.  This is not proof of fraud sufficient to meet a claimant's heavy burden. *eCash Technologies, Inc. v. Guagliardo, supra,* 127 F.Supp.2d 1069, 1079 - 1081 (C.D. Cal. 2000), dismissing without leave to amend a claim of fraud in trademark procurement.

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

11

1    Incontestability Declaration with the USPTO, confirming continuous use of the mark with

2    all goods and services listed in the registration for five continuous years after

3    registration, pursuant to Sections 8 and 15 of the Lanham Act. (15 U.S.C. §§ 1058,

4    1065(c). [Item 8, Ex. 8, RJN.] This filing, a matter of public record in the file wrapper for

5    Registration No. 1,953,489, and easily downloaded from the USPTO's Trademark

6    Document Retrieval ("TDR") section of its internet portal (http://tmportal.uspto.gov),

7    included specimens of the *Monterey Pasta Company®* trademark. The second such

8    specimen submitted with MGF's Declaration, was one of the earlier uses of the mark (for

9    mixed vegetable ravioli). At the bottom of the specimen, and counter to the claims

10    asserted in Windsor's pleadings, it reads "Monterey, California 93940." [Ex. 8, RJN.]

11        Moreover, and as pointed out above in the discussion of facts, MGF's

12    predecessors specifically submitted specimen labels to the USPTO as part of the

13    registration process for the *Monterey Pasta Company®* and *Monterey Pasta Company &*

14    *design®* trademarks, which applications were submitted on June 17, 1994 (Reg. Nos.

15    1,953,489 and 1,951,624 respectively). The USPTO's publicly available TDR electronic

16    files for Registration No. 1,953,489 (the subject of Windsor's counterclaim) establish that

17    one of those specimen labels, received April 28, 1995, associated the producer with the

18    Monterey geographic area, and that the words, "Monterey, CA 93940" had been circled.

19    [Item 5, Ex. 5, RJN.] This indicates that the USPTO's attention was drawn to the

20    association between the trademark registrant and the Monterey geographic area.

21        As of 2001, the mark became incontestable, at least on several grounds, including

22    geographic descriptiveness and misdescription. 15 U.S.C. § 1065. Incontestability

23    provides conclusive evidence of the mark's validity, its registration, the registrant's

24    ownership in the mark and the registrant's exclusive right to use the mark in commerce.

25    15 U.S.C. § 1115(b). After five years of registration, Section 15 of the Act applies (15

26    U.S.C. § 1065), and the grounds for cancellation are limited to those set forth in Section

27    14(3) of the Act (15 U.S.C. § 1064). As a result, Windsor's day to challenge the

28    registration of Monterey Pasta Company® on the alleged grounds of descriptiveness or

1    misdescriptiveness came and went more than six years ago, in November of 2001, after

2    five years elapsed from the registration date and MGF's filed its Incontestability

3    Declaration (Item 8, Ex. 8, RJN), at which time a registration is deemed statutorily

4    incontestable pursuant to 15 U.S.C. §1065(c).  A descriptiveness challenge to

5    registration may no longer be asserted.  *See, e.g.,* Hawes & Dwight, *supra,* Trademark

6    Registration Practice, § 16.6, pp. 16-11, 16-12 (Thomson/West 2007).[6]

7         Nor will the courts let a belated challenger assert such a lost ground, in the guise

8    of some other ground for cancellation, exactly what Windsor seeks to do (using a claim

9    of fraud to make a backdoor descriptiveness argument).  *See, e.g., Imperial Tobacco*

10   *Ltd., Assignee of Imperial Group PLC v. Philip Morris, Inc.,* 899 F.2nd 1575, 1580 (Fed.

11   Cir.1990), citing *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.,* 680 F.2nd 755, 765-

12   66 (Cust. & Pat. App. 1982) (attempting to use abandonment as a guise for a barred

13   confusion claim).  This applies even more so in a disfavored case of alleged fraud.

14   *eCash Technologies, Inc. v. Guagliardo, supra,* 127 F.Supp.2nd 1069, 1079 (C.D. Cal.

15   2000); *Robi v. Five Platters, Inc., supra,* 918 F.2nd 1439, 1444 (9th Cir. 1990).

16        The counterclaim contains no factual allegations that MGF acted with any intent to

17   deceive the USPTO, or that the USPTO actually relied upon such deception, or was in

18   fact deceived.  For example, there are and can be no allegations that the USPTO

19   Examiner had never heard of the County or City of Monterey, California, or that  MGF hid

20   the fact that its principal place of business was located within that County (and in the

21   early stages, in that very City).  One of MGF's specimen labels, received by the USPTO

22   on April 28, 1995 in the course of the registration process for *Monterey Pasta*

23   *Company*® , stated "Monterey, California 93940" on the right-hand side of the label.

24   That notation was circled to highlight it.  [Item 5, Ex. 5, RJN.]  Another specimen, albeit

25   after registration and in support of its Incontestability Declaration, read "Monterey,

26   California 93940" across the bottom of the label.  [Item 8, Ex. 8, RJN.]  MGF's initial

27   registration (No. 1,664,278) in 1991 listed the address as being 596 Lighthouse Ave.,

28   _____

[6]    MGF is providing copies of the pages cited from this authority with its Appendix of
Authorities filed herewith.

13

1   Monterey, CA 93490!  [Item 2, Ex. 2, RJN.]  The registration Windsor now challenges

2   (No. 1,953,489) specifically claimed the prior registration that listed this Monterey,

3   California address for the business.[7]

4          The only evidence is that the USPTO has known all of these things, matters of

5   public record on file with the USPTO, and made its own independent determination that

6   Windsor would now like to second-guess – that the mark was distinctive.[8]  15 U.S.C. §

7   1052(f).  Nor are there factual allegations that the Examiner was duped into mistakenly

8   believing that the name "Monterey" has no goods-place association with pastas or

9   sauces, a fact that is true – there is no such connection.  [See, e.g., Items 10-15, Exs.

10  10-15, RJN.]  There are no allegations demonstrating that the Trademark Office did not

11  know these very basic facts, or that it was somehow deceived as to them, or how the

12  deception allegedly was done.  In short, without even getting to the proof, Windsor's

13  counterclaim is legally insufficient, and it cannot establish a probability of success on the

14  merits.  To satisfy the second prong, the claimant must state a legally sufficient claim.

15  Jarrow Formulas, Inc. v. LaMarche (2002), supra, 31 Cal.4th 728, 741; Wilson v. Parker,

16  Covert & Chidester (2002), supra, 28 Cal.4th 811, 821.

17          b.      **Windsor has no evidence of fraud and cannot prevail.**

18          Windsor has not even properly pleaded a fraud case.  Its allegations are so

19  _____

    [7]      It has been ruled that the intentional failure to disclose to the USPTO that a mark had
20  long been associated with a region known for the goods at issue may warrant cancellation.
    Daesang Corp. v. Rhee Bros., Inc. 2005 WL 1163142 (D. Md. 2005).  But if a mark is not
21  associated with a region known for the goods at issue, as is the case here, there is no obligation
    to disclose this fact.  At the time of MGF's application to register Monterey Pasta Company®,
22  Monterey simply was not known for its pasta and sauces (nor did the term even describe any
    one particular geographic area of the world – there are numerous Monterey's).  Monterey Pasta
23  Company® is neither geographically descriptive, nor geographically misdescriptive.

24  [8]      By way of example only, one of the ways to establish the distinctiveness of a mark under
    Section 2(f) of the Lanham Act is to make a claim of ownership of a prior registration of the same
25  mark for goods which are similar to those set forth in the application.  15 U.S.C. § 1052(f).  See,
    e.g., Hawes & Dwight, Trademark Registration Practice, § 7:9, pp. 7-42.1 (Thomson/West 2007).
26  That is exactly what MGF did, as proved by the Registration itself.  In the very Registration
    attacked here by Windsor (No. 1,953,489), MGF specifically claimed ownership of a prior
27  registration (No. 1,664,278).  That prior registration was before the USPTO.  There is no
    evidence that fraud was practiced on the Examiner, and in fact, the only evidence is that the
28  Examiner accepted MGF's claim of ownership of a prior mark for the 5-year period required by
    Section 2(f) of the Act to establish distinctiveness.  15 U.S.C. § 1052(f).

14

meager, because there are no facts to support them.  But in order to defeat this special

motion to strike, and have its fraud claim go forward, it is Windsor's burden to now come

forward with a sufficient *prima facie* showing of facts to sustain a favorable judgment if

the evidence submitted by the plaintiff is credited. *Jarrow Formulas, Inc. v. LaMarche*

(2002), *supra,* 31 Cal.4th 728, 741; *Wilson v. Parker, Covert & Chidester* (2002), *supra,*

28 Cal.4th 811, 821. To do this, the claimant's evidence must be of such a quality that it

would be admissible at trial.  *See, e.g., Vergos v. McNeal* (2007), s*upra,* 146 C.A.4th

1387, 1394, fn. 6; *Evans v. Unkow* (1995), *supra,* 38 C.A.4th 1490, 1497-98.

Moreover, the *prima facie* showing required of Windsor means that it must also

overcome the following facts and truisms established by MGF on this motion:

1.    MGF's predecessor first applied to register *The Monterey Pasta*

*Company*® on September 24, 1990, listing the registrants' address in its application to

the USPTO as being in the City of Monterey, California.  Neither this nor any subsequent

MGF registered mark depicts or refers to any features or characteristics of the city or

county of Monterey.  No legal challenge was ever asserted against this now

incontestable mark (or any other *Monterey Pasta Company*® mark) until the filing of

Windsor's counterclaim on April 14, 2008, some 16½ years later. [Items 1-4, Exs. 1-4,

RJN.]

2.    The term "Monterey" has a variety of meanings and associations, and is

not simply a geographic term.  The term in Spanish connotes "mountain/forest of the

king."  Even when attached to a geographic location, there are several places named

Monterey, or variants thereof (*e.g.,* "Monteira," "Monterrey," or "Monterrei") in numerous

places on the globe, including Europe, South America, Australia, Mexico, and 18

Monterey's within the United States. [Exs. 10-19, RJN.]  Thus, the term cannot be said

to be primarily geographically descriptive, or even descriptive of any one particular

geographic area.

3.    With regard to the city of Monterey, California, the evidence indicates the

city has no connection or affiliation, let alone a goods-place association, with pasta and

15

1   sauces, and there is no descriptive link between the city name and these products.  The

2   same is true for the California county.  [Items 10-15, RJN.]  It is only where a geographic

3   name creates such a goods-place association among the relevant purchasing public that

4   the term can possibly be either geographically descriptive or misdescriptive.  2

5   McCarthy, § 14.33 (4th Ed.).  For example, the courts have ruled that "Philadelphia"

6   cream cheese is arbitrary, and not geographically descriptive, because Philadelphia is

7   not known for cream cheese.  *Kraft General Foods, Inc. v. BC-USA, Inc.,* 840 F.Supp.

8   344, 349-50 (E.D. Pa. 1993).  It is no different with Monterey and pasta or sauces.[9]

9       4.    MGF has not "misdescribed" anything.  Its *Monterey Pasta Company*® 

10  products have been continuously made in Monterey County, California, since before the

11  first registration of the mark.  There is nothing deceptive about the term *Monterey Pasta*

12  *Company*®.  [Wheeler Declaration, ¶ 10.]  Moreover, since the mark is not descriptive in

13  the first instance, it cannot be misdescriptive.  2 McCarthy, § 14.33 (4th Ed.).

14      5.    MGF sells its *Monterey Pasta Company*® products at thousands of retail

15  and club stores all over the United States, and in numerous locations in Canada and

16  Mexico.  [¶ 4, Wheeler Declaration.]  There is no evidence that consumers in Putnam

17  County, Tennessee, or some other place, are purchasing these products because they

18  favorably associate them with the Monterey region of California, or because they believe

19  that the Monterey region produces outstanding pastas and sauces.  *See, e.g., Kraft*

20  *General Foods, Inc. v. BC-USA, Inc., supra,* 840 F.Supp. 344, 349-50 (E.D. Pa. 1993).

21      6.    There is no evidence that MGF has ever claimed or believed that the term

22  *Monterey Pasta Company*®  is geographically descriptive, or descriptive of its

23  products.[10]

24      7.    Nothing in the record for MGF's registrations of *Monterey Pasta*

25  [9]    Contrast this with "Roquefort" or "Monterey Jack" for cheese, or "Limoges" for china.
26  Those names all connote a particular type of product associated with a particular geographic
    region.

27  [10]    MGF's belief as to the name is also largely irrelevant.  A party's opinions are not
28  actionable as fraudulent representations or concealments.  *InterPetrol Bermuda Ltd. v. Kaiser*
    *Aluminum Intern. Corp.,* 719 F.2nd 992, 996 (9th Cir. 1983).

16

1    *Company®*, including that for the challenged registration (No. 1, 953,489), demonstrates

2    or even suggests any materially false or misleading statement or concealment made to

3    the USPTO that resulted in registration being granted.

4         8.    Nothing in the record suggests that the USPTO was ever unaware of the

5    geographic existence of the city or county of Monterey, California, or ignorant of the fact

6    that MGF made and makes pasta and sauce products within that county.  In fact, MGF's

7    early registrations and label specimens submitted to the USPTO referred to its address

8    in Monterey, California.  [Items 2, 5, and 8, Exs. 2, 5, and 8, RJN.]  One such label

9    specimen even had that designation circled to highlight it!  [Item 5, Ex. 5, RJN.]

10        9.    Nothing in the record suggests that the USPTO was misled or uninformed

11   of any facts material to any registration of *Monterey Pasta Company®* as a trademark,

12   including the challenged registration (No. 1, 953,489).

13        10.   MGF selected the 2(f) option (15 U.S.C. § 1052(f)), claiming ownership of

14   prior Reg. No. 1,664,278 in its application to register *Monterey Pasta Company®*, now

15   challenged in the counterclaim.  In doing so, MGF again alerted the USPTO that

16   Monterey was a city in California, and that MGF's principal place of business had been in

17   that city at the time the prior registration was issued.  [Item 1, Ex. 1, RJN.]

18        11.   Under 15 U.S.C. § 1052(f), the USPTO could have determined the mark

19   distinctive based upon five years of continuous use and prior registration, independent of

20   the issue of descriptiveness.  There is no evidence or allegation that it did not do so

21   when it registered *Monterey Pasta Company®*.

22        12.   MGF has prominently and continuously featured its incontestable *Monterey*

23   *Pasta Company®* trademark on its packaging and promotional literature for years, and

24   that mark is the centerpiece of MGF's branding for its pasta-related products.  [Wheeler

25   Declaration, ¶¶ 4-8.]

26        13.   On November 13, 2001, the USPTO filed MGF's Incontestability

27   Declaration for Registration No. 1,953,489 for *Monterey Pasta Company®*, pursuant to

28   Sections 8 and 15 of the Lanham Act.  [Item 8, RJN.]

17

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

14.    MGF's *Monterey Pasta Company*® trademark, registered January 30, 1996, is incontestable, and, as a matter of law, neither Windsor nor any one else may now challenge its validity on the basis of alleged confusion, descriptiveness, deception, or lack of distinction. 15 U.S.C. §§ 1064; Hawes & Dwight, *supra, Trademark Registration Practice*, § 16.6, pp. 16-11, 16-12 (Thomson/West 2007); Trademark Trial and Appeal Board Manual of Procedure ("TBMP") §§ 307.02, 309.03(c).[11]  [Item 8, RJN.]

Fraud is simply not presumed. Further, it is disfavored under the law, and particularly in trademark law. A proponent of a fraud claim in a cancellation proceeding bears a very heavy burden to establish such a claim. *eCash Technologies, Inc. v. Guagliardo, supra,* 127 F.Supp.2nd 1069, 1079 (C.D. Cal. 2000); *Robi v. Five Platters, Inc., supra,* 918 F.2nd 1439, 1444 (9th Cir. 1990). Windsor has not and cannot meet this burden and establish, by legally admissible evidence, a probability that it will prevail on its counterclaim in this case. Importantly, the time for it to meet that burden is now, in opposition to this motion. The intent of the anti-SLAPP statute is to promptly free MGF from this frivolous claim, unless Windsor can now convince the Court of the likelihood that it will prevail on the fraud claim.

c.    <u>Summary</u>.

MGF has met its burden of demonstrating that the actions on which Windsor's counterclaim is based arise out of activities that are protected by California's anti-SLAPP statute, the exercise of MGF's legally acknowledged right to register its trademarks with the USPTO. It has met the first prong of the anti-SLAPP statute. C.C.P. § 425.16(b)(1).

Moving to the second prong, the burden is now on Windsor to demonstrate to this Court that it has pleaded a legally sufficient claim of fraud, and that it has legally admissible evidence to establish a *prima facie* case for cancellation of MGF's incontestable mark based upon its fraud claim such that there is a probability that it will prevail on that claim. C.C.P. § 425.16(b)(1). It is respectfully submitted that Windsor cannot meet either burden, and MGF's special motion to strike should be granted.

---

[11]    MGF is providing copies of the pages cited from these authorities with its Appendix of Authorities filed herewith.

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

1      **C.    MGF is entitled to recover its legal fees.**

2      An important adjunct of the anti-SLAPP statute is its provision for award of legal

3   fees to the prevailing defendant on the motion.  C.C.P. § 425.16(c) mandates such an

4   award, and MGF requests that the Court's Order on this motion so reflect.  MGF intends

5   to pursue award of its attorney's fees and costs incurred on this special motion to strike

6   by separate motion.  *See, e.g., American Humane Ass'n. v. Los Angeles Times*

7   *Communications* (2001) 92 C.A.4[th] 1095, 1103.

8      Dated:  May 1, 2008

9                                  Respectfully Submitted,

10                                 SHAPIRO BUCHMAN PROVINE & PATTON, LLP

11

12                                 By: _____

13                                     John H. Patton, Cal. SBN 069261
                                       Attorneys for Plaintiff and Counterdefendant
14                                     Monterey Gourmet Foods, Inc.

15

16

17

18

19

20

21   208503.1

22

23

24

25

26

27

28