1  John H. Patton, Cal. SBN 069261
   Kathryn J. Allen, Cal. SBN 196544
2  Matthew T. Homan, Cal. SBN 250458
   SHAPIRO BUCHMAN PROVINE & PATTON LLP
3  1333 North California Boulevard, Suite 350
   Walnut Creek, CA 94596
4  Telephone:  (925) 944-9700
   Facsimile:   (925) 944-9701
5  E-mail:  jpatton@sbllp.com

6  Attorneys for Plaintiff and Counterdefendant
   Monterey Gourmet Foods, Inc.
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  MONTEREY GOURMET FOODS,          No.  C08-01316 (JCS)
    INC., a Delaware corporation,
12                                   Case assigned for all purposes to
            Plaintiff,               Hon. Joseph C. Spero
13
    vs.                              MEMORANDUM OF POINTS AND
14                                   AUTHORITIES IN SUPPORT OF
    WINDSOR QUALITY FOOD             COUNTERDEFENDANT MONTEREY
15  COMPANY LTD., a Texas Limited    GOURMET FOODS, INC.'S MOTION TO
    Partnership; and DOES 1 through 20,  DISMISS COUNTERCLAIM OF WINDSOR
16  inclusive,                       QUALITY FOOD COMPANY, LTD.
                                     [FRCP RULE 12(b)(6)
17          Defendants.
                                     Date:  June 6, 2008
18                                   Time:  9:30 a.m.
                                     Courtroom A (Hon. Joseph C. Spero)
19                                   Trial Date:  Not Set

20                                   Accompanying Papers:  Notice; Proposed
                                     Order; Request for Judicial Notice;
21                                   Companion Special Motion to Strike

22  AND RELATED COUNTERCLAIM.

23

24      Plaintiff and Counterdefendant Monterey Gourmet Foods, Inc. ("MGF")

25  respectfully submits the following memorandum of points and authorities in support of its

26  alternative motion to dismiss the counterclaim of Windsor Quality Food Company, Ltd.

27  ("Windsor") pursuant to FRCP Rule 12(b)(6).[1]

28  _____
    [1]   This motion accompanies MGF's special motion to strike the counterclaim, and is in the
    alternative to that motion.  If the special motion to strike is granted, this motion becomes moot.

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

## I. PRELIMINARY STATEMENT

This is a straightforward case for trademark infringement, unfair competition, and related claims arising out of defendant Windsor's misuse of MGF's *Monterey Pasta Company*® trademark for its Jose Ole® "Chicken Monterey Pasta" skillet meal product line. [*See, e.g.,* Exhibit 1 to Windsor's Answer and Counterclaim.]  Realizing its plain infringement, Windsor seeks to divert the Court's attention down what is nothing more than a pleading rabbit trail, filing a counterclaim against MGF for alleged fraud on the United States Patent & Trademark Office ("USPTO") in the registration of its trademark.

But the file history of the registration, of which this Court can take judicial notice, hornbook trademark law, as well as the pleadings themselves, make it plain that the USPTO long ago determined the mark *distinctive* (as opposed to descriptive), no fraud was ever practiced, and Windsor's counterclaim is nothing more than an transparent and belated effort to make an end run around what for years has been an incontestable mark.  15 U.S.C. §§ 1064, 1065.  *See, e.g., Imperial Tobacco Ltd. v. Phillip Morris Inc.,* 899 F.2nd 1575, 1578, 1580 (Fed. Cir. 1990) (noting incontestable marks cannot be cancelled on pretextual grounds); *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.,* 680 F.2d 755, 763 (Cust. & Pat. App. 1982) (incontestable marks are subject to cancellation proceedings only on statutorily limited grounds).

## II.   THE GIST OF WINDSOR'S COUNTERCLAIM

Windsor's counterclaim is cryptic, avoiding specific resort to the record in the USPTO registration proceedings concerning MGF's *Monterey Pasta Company*® trademark.  Windsor *has to* ignore that record and place its own spin on it, or its counterclaim would implode.  Here is the substance of what Windsor alleges:

1)     MGF is the owner of the trademark for *Monterey Pasta Company,* Registration No. 1,953,489, in Class 030 for pasta and sauces.  [Complaint, ¶ 9, Ex. 1; Counterclaim, ¶ 7.]

2)     The terms *Monterey Pasta Company*® are, according to Windsor, geographically descriptive (or alternatively, "geographically misdescriptive") and merely

Shapiro Buchman
Provine & Patton LLP
Attorneys At Law
Walnut Creek

1  descriptive of MGF's goods.  MGF is located in Salinas, Monterey County, California.

2  [Counterclaim, ¶ 8; Complaint, ¶ 6.]

3      3)     The USPTO allegedly "was not made aware" of what Windsor terms the

4  "geographically descriptive nature" of the term "Monterey" during the prosecution of the

5  registration application.  [Counterclaim, ¶ 9.]

6      4)     "Nothing in the file wrapper indicates that the Examiner was informed, at

7  any time, of the truly geographical . . . manner in which the terms 'Monterey Pasta

8  Company' were used or to be used by MGF."  [Counterclaim, ¶ 10.]

9      5)     The alleged failure to notify the USPTO of the alleged "descriptive nature"

10  of the terms *Monterey Pasta Company*® constitutes an alleged fraud on the USPTO,

11  because the USPTO allegedly "would not have granted" registration (No. 1,953,489)

12  "without proof of secondary meaning."  [Counterclaim, ¶ 11.]

13      6)     Registration No. 1,953,489 should be cancelled due to alleged fraud on the

14  USPTO.  [Counterclaim, ¶ 12.]

15              III.    **THE FACTS NOW BEFORE THE COURT**

16      A.    Facts Subject to Judicial Notice.

17      But we are not restricted to the story as Windsor would couch it, since these

18  proceedings were part of a formal process that every trademark registration undergoes

19  in the USPTO.  Under Rule 201(d) of the Federal Rules of Evidence, a court shall take

20  judicial notice if requested by a party and supplied with the necessary information.

21      On a motion to dismiss, the Court is not confined to the pleadings, but may also

22  consider matters that are properly the subject of judicial notice.  *Gay-Straight Alliance*

23  *Network v. Visalia Unified School Dist.,* 262 F.Supp. 2nd 1088, 1099 (E.D.Cal. 2001).  In

24  this case, Sonoma Foods has requested that the Court take judicial notice of official

25  actions and records of the USPTO, an agency of the federal government.  Under Rule

26  201 of the Federal Rules of Evidence ("FRE"), a district court may judicially notice official

27  acts of government agencies or departments.  *See, e.g., National Audubon Soc. v. Dept.*

28  *of Water & Power of City of Los Angeles,* 496 F.Supp. 499, 503 (E.D.Cal. 1980).

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

Similarly, courts may take judicial notice of officially maintained government publications, such as the USPTO's Trademark Electronic Search System ("TESS"). *See, e.g., Austracan (U.S.A.) Inc. v. Neptune Orient Lines, Ltd.,* 612 F.Supp. 578, 584-85 (S.D.N.Y. 1985). A district court is, of course, empowered to take judicial notice of trademark registrations with the USPTO. *Metro Pub., Ltd. v. San Jose Mercury News,* 987 F.2nd 637, 640-41 (9th Cir. 1993).

The Court should consider the following facts which are judicially noticeable, in addition to the allegations of Windsor's counterclaim:

1)    The Principal Record for Registration No. 1,664,278 shows that *The Monterey Pasta Company & design* was registered in Class 30 for fresh pasta and sauces, on November 12, 1991. [Item 2, Ex. 2, Request for Judicial Notice ("RJN").]

2)    The Principal Record for Registration No. 1,664,278 reflects that this mark was registered to "Uburns (*sic*) & Hill, Inc.," a predecessor to MGF, with the address of 596 Lighthouse Avenue, *Monterey,* California 93940. [Item 2, Ex. 2, RJN.][2]

3)    The Principal Record for Registration No. 1,953,489 of *Monterey Pasta Company,* the mark attacked in Windsor's counterclaim, establishes that it was registered long ago, on January 30, 1996. [Item 1, Ex. 1, RJN.]

4)    The Principal Record for Registration No. 1,953,489 of *Monterey Pasta Company* reflects that MGF's predecessor (MPC) specifically claimed ownership of prior Registration No. 1,664,278, which had listed the registrant's address in Monterey, California. [Item 1, Ex. 1, RJN.][3]

5)    The USPTO's public records concerning the registration of *Monterey Pasta Company®* for Registration No. 1,953,489, the mark attacked in the counterclaim, public records available on-line from the USPTO's Trademark Document Retrieval ("TDR") portal (http://tmportal.uspto.gov), establish that prior to registration of this mark, the

---

[2]    The reference to "uBurns & Hill, Inc." is a typographical error. The name of the registrant was "Burns & Hill, Inc." ("BHI"), a predecessor to plaintiff MGF.

[3]    Windsor has chosen to completely ignore this important fact, that the USPTO was fully aware of this prior registration of a similar mark (No. 1,664,2781) and MGF's ownership of same, when it issued Reg. No. 1,953,489 on January 30, 1996.

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

1  USPTO received and filed (on April 28, 1995) a label specimen for the mark from MGF's

2  predecessor (MPC), upon which was printed an association between the label and the

3  City of Monterey, California, and that this printing ("Monterey, CA 93940") was circled,

4  indicating attention was drawn to such association.  [Item 5, Ex. 5, RJN.] Here is a copy

5  of the first page of that label specimen:



13      6)      The USPTO file wrapper for Registration No. 1,953,489 of *Monterey Pasta*

14  *Company* demonstrates that on November 13, 2001, MGF filed a Combined Declaration

15  of Use & Incontestability Under Sections 8 & 15 of the Lanham Act ("Incontestability

16  Declaration") for that mark, and that one of the label specimens submitted as part of the

17  Incontestability Declaration was an early label employing the mark (for mixed vegetable

18  ravioli).  At the bottom of the specimen it reads "Monterey, California 93940."[4]  [Item 8,

19  Ex. 8, RJN.]

20      7)      "Monterey" is a Spanish term, that generally means "mountain of the king"

21  or "forest of the king."  The term, or variations of it ("Monterrei," "Monterrey," and

22  "Monteira") has been used as a place name in numerous locations, including Spain,

23  Mexico, Columbia, Australia, and for eighteen (18) different hamlets, cities or towns

24  within just the United States.  [Items 10-19, Exs. 10-19, RJN.]

25      8)      The term "Monterey" for California is defined in Merriam Webster's

26  Geographical Dictionary (1997) (one of the dictionaries used by the USPTO to consider

---

27  [4]      The file wrapper, including this filing on November 13, 2001, is also easily downloaded

28  from the USPTO's TDR section of its internet portal (http://tmportal.uspto.gov).  Windsor has
elected to ignore it for obvious reasons.

1  geographical descriptiveness), and makes no reference to food products, let alone

2  pastas and sauces.  The full definition is set forth in the accompanying Request for

3  Judicial Notice.  [Item 13, Ex. 13, RJN.]

4      9)      The term "Monterey" for California is defined in The Columbia Gazetteer of

5  North America (2000) (another dictionary used by the USPTO to consider geographical

6  descriptiveness), and the Gazetteer's closest reference to pastas or sauces is that the

7  city was "formerly a leading fishing and whaling port," which "now bases its economy on

8  tourism."  The full definition is set forth in the accompanying Request for Judicial Notice.

9  [Item 14, Ex. 14, RJN.]

10      10)      The term, "Monterey, California" is discussed extensively in 9 pages found

11  on Wikipedia's® public website, which mentions that the City is noted for "its historically

12  famed fishery," canneries, and "semi-hard cheese known as Monterey Jack."  No

13  references are found to pastas or sauces.  [Item 15, Ex. 15, RJN.]

14      Taken as a whole, these facts demonstrate that when the USPTO registered the

15  trademark that is attacked in Windsor's counterclaim (Reg. No. 1,953,489), the Examiner

16  was already aware: a) that MGF (through a predecessor) was the owner of a prior

17  registration of virtually the same mark for pastas and sauces (Reg. No. 1,664,278); b)

18  that the prior mark had initially been registered to an applicant (predecessor to MGF)

19  based in the city of Monterey, California; and c) that the mark had been used in

20  commerce since the late 1980's.  Further, there was no link between the Monterey,

21  California (or any other Monterey) geographic area and the products for which

22  registration was granted, pastas and sauces (no goods-place association).  And, as of

23  November 13, 2001, with the filing of MGF's Incontestability Declaration (Item 8, Ex. 8,

24  RJN), the subject trademark became incontestable on grounds of descriptiveness,

25  geographic descriptiveness, or geographic misdescriptiveness.  15 U.S.C. §§ 1064,

26  1065.  As discussed below, these truths, along with the deficiencies contained in the

27  pleading, are fatal to Windsor's counterclaim, and justify its dismissal without leave to

28  amend.

III.    LEGAL ARGUMENT

A.    **Windsor's counterclaim is in reality a disguised and improper attack on an incontestable mark.**

Windsor's counterclaim repeatedly alleges the conclusion of law that *Monterey Pasta Company*® is "geographically descriptive," or "in the alternate geographically misdescriptive," and/or "merely descriptive," all common grounds for opposition or cancellation of a trademark registration. [Counterclaim, ¶¶ 8-11.] Indeed, these allegations of description are the crux of Windsor's attack on the mark, as demonstrated in Paragraph 11 of its counterclaim, where it alleges that because of them "the USPTO would not have granted a trademark registration for the terms 'Monterey Pasta Company' without proof of secondary meaning."

But, as the registration itself establishes, *Monterey Pasta Company*® has been a registered mark for more than twelve years.  [Ex. 1, Complaint; Item 1 Ex. 1, RJN.] Having been registered for more than five years, and upon the November 13, 2001 filing of MGF's Incontestability Declaration (Item 7, Ex. 7, RJN), the mark is now incontestable as to a claim of descriptiveness or misdescriptiveness.  15 U.S.C. §§ 1058, 1065(c). Where, as here, "the registration is five or more years old," the "descriptive" grounds Windsor complains of do not apply, and may not be asserted to cancel such a mark. *See, e.g.,* Hawes & Dwight, *Trademark Registration Practice*, § 16.6, pp. 16-11, 16-12 (Thomson/West 2007); Trademark Trial and Appeal Board Manual of Procedure ("TBMP") §§ 307.02, 309.03(c).[5]

Thus, Windsor cannot now challenge the validity of MGF's *Monterey Pasta Company*® trademark on grounds that it is "geographically descriptive," "in the alternate geographically misdescriptive," and/or "merely descriptive."  But that is exactly what it seeks to do in its counterclaim.  The *only* basis for the counterclaim is the bald allegation, on information and belief, that the USPTO was not made aware of the alleged "descriptive" nature of this composite mark. [Counterclaim, ¶¶ 9-11.] The Courts have

---

[5]    MGF is providing copies of the pages cited from the authorities with its Appendix of Authorities filed herewith.

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

MOTION TO DISMISS COUNTERCLAIM – MEMORANDUM OF POINTS & AUTHORITIES          C08-01316(JCS)

1  rejected the notion that a petition for cancellation, which in essence relies upon grounds

2  that must be asserted within 5 years of registration, may be brought after 5 years, in the

3  guise of a claim of abandonment. *See, e.g., Imperial Tobacco Ltd., Assignee of Imperial*

4  *Group PLC v. Philip Morris, Inc., supra*, 899 F.2d 1575, 1580 (Fed. Cir.1990), citing

5  *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp., supra*, 680 F.2d 755, 765-66 (Cust. &

6  Pat. App. 1982).  That rejection should apply in even greater force to this case, where

7  the guise used by Windsor comes in the form of a claim of fraud, a serious and

8  disfavored charge. *eCash Technologies, Inc. v. Guagliardo,* 127 F.Supp.2nd 1069, 1079

9  (C.D. Cal. 2000); *Robi v. Five Platters, Inc.,* 918 F.2nd 1439, 1444 (9th Cir. 1990).

10  Windsor cannot now use a fraud claim (particularly one as skinny as it alleges) to assert

11  the alleged "descriptive" nature of the mark as grounds for cancellation.[6]

12      **B.**      **Windsor's counterclaim does not meet the heightened pleading standard for fraud under FRCP Rule 9(b).**

13

14  It is a fundamental rule of pleading in federal practice that fraud must be pleaded

15  with particularity.  FRCP Rule 9(b) requires a party to "state with particularity the

16  circumstances constituting fraud."  It is not enough to string together a list of alleged

17  acts or statements and then label them "fraudulent."  Rather, a claimant "must include

18  statements regarding the time place and nature of the alleged fraudulent activities, and

19  must specifically identify what was misrepresented or concealed so as to give the

20  opposing party notice of the particular conduct which is alleged to constitute the fraud.

21  Merely making general conclusory allegations of fraud, and then reciting a list of neutral

22  facts, is not sufficient." *Stack v. Lobo, 903* F.Supp. 1361, 1367 (N.D. Cal. 1995), citing

23  *Semegen v. Weidner,* 780 F.2nd 727, 731 (9th Cir. 1985).

24      *eCash Technologies, Inc. v. Guagliardo, supra,*127 F.Supp.2nd 1069 (C.D. Cal.

---

[6]      Because there are no facts that would support a fraud claim against MGF, and because Windsor bears a very heavy burden of proof to sustain such a claim, Windsor cannot hope to demonstrate the probability that it will prevail on the merits of this case, and its counterclaim is subject to a special motion to strike under California Code of Civil Procedure Section 425.16. This motion to dismiss is a companion motion to that special motion to strike, and it is submitted that the Court should *first* address the special motion to strike, and dispose of the claim on the merits, or lack thereof.  Only if the special motion to strike were denied, need the Court address this motion to dismiss.

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

1   2000), is closely on point, a case also involving a counterclaim to cancel a trademark

2   based on alleged fraud, and motions to dismiss and strike (anti-SLAPP).  In *eCash,* the

3   district court examined a counterclaim alleging that the registrant had fraudulently

4   concealed from the USPTO its alleged knowledge that others, including the

5   counterclaimant, had used the mark.  The *eCash* court noted that in the context of a

6   trademark cancellation claim based upon alleged fraud on the USPTO, "affirmative"

7   fraud requires that each of the following elements be alleged and proven: (1) a false

8   representation regarding a material fact; (2) knowledge or belief that the representation

9   is false ("scienter"); (3) an intention to induce the listener to act or refrain from acting in

10  reliance on the misrepresentation; (4) reliance on the misrepresentation ("reasonable

11  reliance"); and (5) damage proximately resulting from such reliance.  *eCash, supra,* 1079

12  -1081 , citing J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §

13  31:61 at 31-112 (2000) [hereinafter *McCarthy* ]; *Robi v. Five Platters, Inc.,* 918 F.2nd

14  1439, 1444 (9th Cir.1990).  In dismissing the fraud claim without leave to amend, the

15  *eCash* court observed that a charge of fraud in the procurement of a trademark

16  registration is a *disfavored* defense, and the party alleging fraud bears a "heavy" burden

17  of proof.  *eCash Technologies, supra,* 127 F.Supp. at 1079, citing *McCarthy* § 31:68 at

18  31-119, 31-120 (fraud in trademark procurement, though often alleged, is seldom

19  proven); *Robi, supra,* 918 F.2nd at 1444.

20      Windsor's counterclaim falls woefully short of these standards.  The sum total of

21  its allegations, *made on information and belief,* are that "the USPTO was not made

22  aware by [MGF] of the geographically descriptive (or in the alternative geographically

23  misdescriptive) nature of the term 'Monterey' during the prosecution of the application."

24  [Counterclaim, ¶ 9.][7]  The record shows otherwise (see Subpart C below), but even if it

25  ---

[7]      Windsor  does not even correctly analyze the mark.  The mark registered by the USPTO

26  was not just "Monterey," but rather a *composite* mark (*Monterey Pasta Company*®), "and its
    validity was not judged by an examination of its parts.  "Rather, the validity of a trademark is to

27  be determined by viewing the trademark as a whole."  *California Cooler, Inc. v. Loretto Winery,
    Ltd.,* 774 F.2nd 1451, 1455 (9th Cir. 1985).  *California Cooler* further observes, quoting McCarthy,"

28  a composite geographical mark should not be dissected into its parts to determine whether it is
    primarily geographical or not."  *Id.*

8

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

1    did not, this is not adequate pleading to sustain a fraud claim.

2         First, the allegation that the composite trademark *Monterey Pasta Company*® is

3    geographically descriptive or misdescriptive is nothing more than a bald conclusion of

4    law, which this Court can ignore.  *See, e.g., Sprewell v. Golden State Warriors,* 266 F.3rd

5    979, 988 (9th Cir. 2001).  *No facts* are alleged to demonstrate that the composite term is

6    geographically descriptive or misdescriptive, because no such facts exist.  For example,

7    Windsor does not allege that consumers in Putnam County, Tennessee, or any other

8    place, were purchasing these products because they favorably associated them with the

9    Monterey region of California, or because they believed that the Monterey region

10   produces outstanding pastas and sauces.  *See, e.g., Kraft General Foods, Inc. v. BC-*

11   *USA, Inc., supra,* 840 F.Supp. 344, 349-50 (E.D. Pa. 1993) (holding "Philadelphia"

12   cream cheese not to be a geographically descriptive term); *see, also, Forschner Group*

13   *v. Arrow Trading Co.,* 30 F.3rd 348, 355 (2nd Cir. 1994).

14        Moreover, there is no allegation of scienter, or that MGF or its predecessors knew

15   or believed that its trademark for *Monterey Pasta Company*® was geographically

16   descriptive or misdescriptive during the registration process for the mark.  Nor can there

17   be such an allegation, because this composite mark is not geographically descriptive.

18   "Monterey" means "mountain" or "forest of the king."  It also has been applied to name a

19   number of places around the globe, and is not fixed onto any one particular geographic

20   location. [*See, e.g.,* Item 19, Ex. 19, RJN.]  And there is absolutely no connection or

21   affiliation, let alone a goods-place association, between the city of Monterey, California,

22   and pasta and sauces, and Windsor's counterclaim does not allege any such

23   association.  The same is true for the California county.  [Items 10-19, RJN.]  Viewed

24   against these judicially noticeable truths, Windsor's conclusion of law that the mark was

25   geographically descriptive or misdescriptive, counts for nothing.  *Sprewell v. Golden*

26   *State Warriors, supra,* 266 F.3rd 979, 988 (9th Cir. 2001).

27        It is hornbook law that only where a geographic name creates a goods-place

28   association among the relevant purchasing public that it can possibly be geographically

1   descriptive or misdescriptive.  2 McCarthy, § 14.33 (4th Ed.).  For example, "Philadelphia"

2   cream cheese is arbitrary, and not geographically descriptive, because Philadelphia isn't

3   known for cream cheese.  *Kraft General Foods, Inc. v. BC-USA, Inc., supra,* 840 F.Supp.

4   344, 349-50 (E.D. Pa. 1993).  The same holds true for "Swiss Army" knives.  *Forschner*

5   *Group v. Arrow Trading Co., supra,* 30 F.3[rd] 348, 355 (2nd Cir. 1994).  Indeed, *nowhere*

6   *in its counterclaim does Windsor allege that the USPTO did not independently determine*

7   *that MGF's mark was not geographically descriptive or misdescriptive!*  That alone

8   negates falsity, reliance, and causation, all essential elements to a fraud claim.

9         It is no different with Monterey and pasta or sauces.[8]  Windsor's counterclaim fails

10  to allege facts to support the necessary goods-place association that would be

11  necessary for the trademark to be geographically descriptive or misdescriptive, and its

12  conclusion of law that it was cannot support a pleading for fraud.  It cannot state a fraud

13  claim without alleging facts to show that a representation or nondisclosure about

14  geographic descriptiveness was false and misleading, and known and intended to be so.

15  *See, e.g., Moore v. Kayport Package Exp., Inc.,* 885 F.2[nd] 531, 540-41 (9th Cir. 1989);

16  *Aureflam Corp. v. Pho Hoa Hiep, Inc.,* 2005 WL 1562933 (N.D. Cal. 2005); *Huszar v.*

17  *Zeleny,* 269 F.Supp.2[nd] 98, 105 (E.D.N.Y. 2003); *Attick v. Valeria Associates, L.P.,* 835

18  F.Supp. 103, 111 (S.D.N.Y. 1992).

19        Indeed, even if MGF believed otherwise at the time that it sought registration (and

20  there is no allegation that it did), such subjective knowledge is nothing more than

21  opinion.  A party cannot be held liable in fraud for expressing or withholding an opinion.

22  A party's opinions are not actionable as fraudulent representations or concealments.

23  *InterPetrol Bermuda Ltd. v. Kaiser Aluminum Intern. Corp.,* 719 F.2[nd] 992, 996 (9th Cir.

24  1983).  There is no legal duty to inform the USPTO of a party's subjective opinion about

25  whether a mark may be descriptive.

26        Windsor does not and cannot allege that MGF or its predecessors lied to the

27  USPTO.  Windsor does not even allege what MGF supposedly told the USPTO during

28  ─────────────
[8]     Contrast this with "Roquefort" or "Monterey Jack" for cheese, or "Limoges" for china.
Those names connote a particular type of product associated with a particular geographic area.

10

1   the course of its application to register the mark.  Indeed, it conspicuously avoids resort

2   to the public records available at the USPTO for MGF's registration activities.

3          Nor does Windsor allege any facts to demonstrate that the USPTO relied upon

4   representations or nondisclosures from MGF in registering the trademark.  The

5   conclusion that it was not told about the alleged descriptive nature of the mark *Monterey*

6   *Pasta Company*® (Counterclaim, ¶ 11) is legally insufficient.  *Sprewell v. Golden State*

7   *Warriors, supra,* 266 F.3rd 979, 988 (9th Cir. 2001).  Indeed, that conclusion begs the

8   question as to whether the composite mark was in fact "descriptive," where no facts are

9   alleged to establish that it was in fact descriptive (and the record indicates no goods-

10  place association).  It begs the question as to what the USPTO knew or didn't know, or

11  what it did in the process of considering registration.  It totally assumes, without alleging

12  any facts, that the USPTO was duped into registering a mark, where the record

13  demonstrates the exact opposite – the PTO registered *Monterey Pasta Company*®

14  because it independently determined it was not descriptive, and/or was distinctive,

15  based on MGF's continuous ownership of a prior registered mark under 15 U.S.C. §

16  1052(h).[9]  No allegations negate this, and the fraud claim fails.

17         C.    **Judicially cognizable facts demonstrate that the USPTO was not**
               **"defrauded" in determining MGF's mark distinctive enough to warrant**
18             **registration.**

19         Beyond the fact that Windsor has not pleaded a fraud case, the record before this

20  Court establishes that it cannot plead such a case.  Matters properly the subject of

21  judicial notice trump a pleader's allegations.  A District Court need not ". . . accept as

22  true allegations that contradict matters properly subject to judicial notice or by exhibit."

23  *Sprewell v. Golden State Warriors, supra,* 266 F.3rd 979, 988 (9th Cir. 2001).

---

[9]        By way of example only, one of the ways to establish the distinctiveness of a mark under
Section 2(f) of the Lanham Act is to make a claim of ownership of a prior registration of the same
mark for goods which are similar to those set forth in the application.  15 U.S.C. § 1052(f).  *See,
e.g.,* Hawes & Dwight, *Trademark Registration Practice,* § 7:9, pp. 7-42.1 (Thomson/West 2007).
That is exactly what MGF did, as proved by the Registration itself.  In the very Registration
attacked here by Windsor (No. 1,953,489), MGF specifically *claimed ownership of a prior
registration* (No. 1,664,278).  That prior registration was before the USPTO.  There is no
evidence that fraud was practiced on the Examiner, and in fact, the only evidence is that the
Examiner accepted MGF's claim of ownership of a prior mark for the 5-year period required by
Section 2(f) of the Lanham Act to establish distinctiveness.  15 U.S.C. § 1052(f).

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

1      First, the assumption implicit (but not even alleged) in Windsor's allegations is that

2   MGF's predecessors did not inform the USPTO that Monterey was a geographic area in

3   California when they applied for Registration No. 1,953,489. But Registration No.

4   1,953,489, specifically claimed ownership of prior Registration No. 1,664,278, which

5   listed the registrant's address as 596 Lighthouse Avenue, Monterey, CA 93940." [Items

6   1 and 2, Exs. 1 and 2, RJN.] How could MGF have duped the USPTO about the

7   existence of this city, and its own prior location within that city, when it expressly

8   disclosed this information in its registration materials? Moreover, the USPTO's own

9   records for the registration of *Monterey Pasta Company*® demonstrate that its attention

10  was specifically called to the association between the application and the city of

11  Monterey, California. The label specimen the USPTO received on April 28, 1995,

12  specifically notes "Monterey, CA 93940" on its right side, and either the USPTO itself, or

13  the applicant (MGF's predecessor) circled that notation, indicating attention should be

14  paid to it. [Item 5, Ex. 5, RJN.] It is preposterous to assume, *especially without any*

15  *pleaded facts*, that the USPTO was somehow ignorant of the existence of Monterey,

16  California, or its association with the label specimen.[10]

17      Second, it is far more logical to assume that the Examiner made the same

18  determination that the courts have made with regard to "Philadelphia" cream cheese and

19  "Swiss" army knives – that the composite mark is neither geographically descriptive nor

20  geographically misdescriptive. The record before this Court justifies such a result. It

21  demonstrates that *Monterey Pasta Company*® is not geographically descriptive, not

22  geographically misdescriptive, and not merely descriptive of the products sold. The

23  Court can take judicial notice that the term Monterey is a Spanish term for "mountain of

24  ─────────────────────────
    [10]    Nevertheless, this is what Windsor would have this Court conclude by virtue of its wholly

25  unsupported conclusion that "upon information and belief, nothing in the file wrapper indicates
    that the Examiner was informed, at any time, of the truly geographically descriptive (or in the

26  alternative geographically misdescriptive) manner in which the terms "Monterey Pasta Company'
    were used or to be used by MGF." [¶ 10, Counterclaim.] FRCP Rule 11(b)(3) requires that such

27  allegations have evidentiary support. But to the contrary, documents readily available from the
    USPTO's public records, *most of them on-line*, show that the USPTO *was* aware of the

28  association between the registrant and Monterey, California, which directly refutes this
    allegation. *See, e.g.,* Item 5, Ex. 5, RJN.]

                                                                              12

1  the king" or "forest of the king."  It can take judicial notice that when used as a proper

2  name for a geographic area, there are numerous Monterey's or variations thereof, all

3  over the world (18 in the U.S. alone), and not in just one particular geographic area.  It

4  can take judicial notice that there is absolutely no goods-place association between

5  Monterey, California, and pastas or sauces, for which the registration was obtained.

6  [Items 10-19, Exs. 10-19, RJN.]  Windsor's counterclaim seeks to rewrite those truths,

7  yet fails to allege a *single fact* to establish that this composite mark is descriptive or

8  misdescriptive in any way.[11]  As such, it is wholly deficient.

9        Third, the record also shows that the USPTO could have independently

10  determined that *Monterey Pasta Company*® was distinctive under 15 U.S.C. § 1052(f),

11  based upon the prior registration and 5 years of continuous use.  [Items 1 and 2, Exs. 1

12  and 2, RJN; see footnote 10 above.]  In order to establish its fraud claim, Windsor has to

13  allege and prove facts to demonstrate that this did *not* happen, and instead, the USPTO

14  only registered the mark because it was tricked into relied upon some fraudulent act.

15  Windsor has alleged no such facts.  The mere supposition that the USPTO would not

16  have registered this mark had it known (unalleged) matters does not plead the elements

17  of reliance, falsity, or scienter, nor does it negate the determination of distinctiveness

18  under 15 U.S.C. § 1052(f).

19        Fourth, the record demonstrates that this composite mark is now incontestable on

20  the basis of alleged descriptiveness.  [Items 1 and 8, Exs. 1 and 8, RJN.]  *See, e.g.,*

21  Hawes & Dwight, *Trademark Registration Practice*, § 16.6, pp. 16-11, 16-12

22  (Thomson/West 2007); Trademark Trial and Appeal Board Manual of Procedure

23  ("TBMP") §§ 307.02, 309.03(c).

24

25

26

27
[11]     And again, the time for Windsor to challenge the mark based on alleged descriptiveness
28  elapsed more than six years ago.  It has no basis to resurrect such a challenge now when the
    mark has become incontestable on that basis.

Shapiro Buchman
Provine & Patton LLP
ATTORNEYS AT LAW
WALNUT CREEK

1      **D.**      **Leave to amend is not appropriate.**

2          Nor can Windsor truthfully plead around these problems, especially when the

3 USPTO's record refutes its claim. For that reason, and subject to the Court's ruling on

4 MGF's companion special motion to strike, it is respectfully submitted that Windsor's

5 tactical counterclaim should be dismissed without leave to amend. *See, e.g., In re*

6 *Vantive Corp. Securities Litigation,* 283 F.3rd 1079, 1097-98 (9th Cir. 2002); *In re Read-*

7 *Rite Corp.,* 335 F.3rd 843, 845 (9th Cir. 2003).

8          Dated: May 1, 2008

9                        Respectfully Submitted,

10                        SHAPIRO BUCHMAN PROVINE & PATTON LLP

12                        By:_____

13                            John H. Patton, Cal. SBN 069261
                           Attorneys for Plaintiff and Counterdefendant
14                            Monterey Gourmet Foods, Inc.

21 208448.1

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK