McAFEE & TAFT A Professional Corporation
  Clifford C. Dougherty, III (OBA #11290) (*admitted pro hac vice*)
  Robert W. Dace (OBA # 10263) (*admitted pro hac vice*)
  Jennifer B. Rader (OBA # 19198) (*admitted pro hac vice*)
Tenth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma  73102
Telephone:  (405) 235-9621
Facsimile:  (405) 235-0439
Email:  bob.dace@mcafeetaft.com

CARR, McCLELLAN, INGERSOLL, THOMPSON & HORN
Professional Law Corporation
  Lori A. Lutzker, Esq. (Bar No. 124589)
216 Park Road
P.O. Box 513
Burlingame, California  94011-0513
Telephone:  (650) 342-9600
Facsimile:  (650) 342-7685
Email:  llutzker@carr-mcclellan.com

Attorneys for Defendant
WINDSOR QUALITY FOOD COMPANY, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTEREY GOURMET FOODS, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>WINDSOR QUALITY FOOD COMPANY LTD., a Texas Limited Partnership; and DOES 1 through 20, inclusive,<br><br>          Defendants. | Case No. C08-01316 (JCS)<br>**DEFENDANT'S OPPOSITON TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6) AND OPPOSITION TO PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**<br><br>Date:  June 6, 2008<br>Time:  9:30 a.m.<br>Courtroom A (Hon. Joseph C. Spero) |

Defendant and Counterclaimant, Windsor Quality Food Company Ltd. ("Windsor"), by and through its undersigned attorneys, files its Opposition to Motion by Plaintiff Monterey

**WINDSOR QUALITY FOOD COMPANY, LTD.'S OPPOSITON TO MOTION BY PLAINTIFF MONTEREY GOURMET FOODS, INC., TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)**
C08-01316 (JCS)

1  Gourmet Foods, Inc. ("MGF") to Dismiss Counterclaim Pursuant to Rule 12(b)(6).  Windsor also
2  asks the Court to deny MGF's request for judicial notice because the "facts" for which MGF
3  requests notice are not relevant to the pending motions and are not appropriate for judicial notice.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WINDSOR QUALITY FOOD COMPANY, LTD.'S OPPOSITON TO MOTION BY PLAINTIFF MONTEREY GOURMET FOODS, INC., TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)**

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ............................................................................................................. **iii**

**TABLE OF AUTHORITIES** ...................................................................................................... **iv**

**PRELIMINARY STATEMENT** ................................................................................................... **1**

**LEGAL ARGUMENT** ................................................................................................................... **1**

**I.   Windsor's Counterclaim states a claim upon which relief can be granted pursuant to Fed.R.Civ.P.12(b)(6) and complies with the pleading standards set forth in both Fed.R.Civ.P. 8(a)(2) and (9)(b)** .................................................................................... **2**

**II.   The arguments and requests for judicial notice set forth in MGF's Motion to Dismiss are inappropriate at this stage of the proceeding and must be denied** .......... **4**

**CONCLUSION** .............................................................................................................................. **11**

Page iii

Case No. C08-01316 (JCS)

**WINDSOR QUALITY FOOD COMPANY, LTD.'S OPPOSITON TO MOTION BY PLAINTIFF MONTEREY GOURMET FOODS, INC., TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)**

# TABLE OF AUTHORITIES

## Cases

*California v. Sup. Ct. of California, San Bernardino County,*
    482 U.S. 400 (1987) .................................................................................................. 5

*eCash Technologies, Inc. v. Guargliardo*, 127 F. Supp. 2d 1069 (C.D. Cal. 2000) ...................... 7

*Federal Treasury Enterprise Sojuzplodoimport v. Spirts Int'l N.V.,*
    425 F. Supp. 2d 458 (S.D.N.Y. 2006) ................................................................... 3,6

*Kraft General Foods, Inc. v. BC-USA, Inc.*, 840 F. Supp. 344 (E.D. Pa. 1993) ........................... 8

*Metro. Pub., Ltd. V. San Jose Mercury News*, 987 F.2d 637 (9th Cir. 1993) ................................ 4

*Moore v. Kayport Package Express, Inc.,* 885 F.2d 531 (9th Cir. 1980) ....................................... 6

*Stack v. Lobo,* 902 F.Supp. 1361 (N.D. Cal. 1995) ...................................................................... 6

*T.A.D. Avanti, Inc. v. Phone-Mate, Inc.*, 1978 WL 21444, 199 U.S.P.Q. 648 (C.D. Cal. 1978) .... 2

## United States Codes

15 U.S.C. §1120 .............................................................................................................................. 2

15 U.S.C. §1115 .............................................................................................................................. 6

## Other Authority

Cal. Bus. & Prof. Code §17200 ...................................................................................................... 1

Fed. R. Evid. 201 ............................................................................................................................ 4

Fed. R. Evid. 201(b)(2) ................................................................................................................... 4

Fed. R. Evid. 901(b)(1) ................................................................................................................... 4

FRCP 8(a)(2) ........................................................................................................................... 2,3,11

FRCP 9(b) ........................................................................................................................ 2,3,6,7,8,11

FRCP 12(b)(6) .......................................................................................................................... 1,4,11

FRCP 44(a)(1)(B) ........................................................................................................................... 4

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,*
(4th ed. 2008) ............................................................................................................................ 5,9

Page iv                                                                                                    Case No. C08-01316 (JCS)

**WINDSOR QUALITY FOOD COMPANY, LTD.'S OPPOSITON TO MOTION BY PLAINTIFF MONTEREY GOURMET FOODS, INC., TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)**

**PRELIMINARY STATEMENT**

On March 7, 2008, MGF filed a complaint seeking an injunction as well as damages, attorney fees and other monetary relief for Windsor's merely descriptive use of the terms "chicken monterey pasta" on packaging of a skillet meal product that clearly and prominently displays Windsor's well-known and federally registered "JOSE OLE" trademark. The product's main ingredients are "chicken," "monterey jack cheese" and "rotini pasta" as is evident from the information on the side panel of the packaging. A true and correct copy of the packaging is attached hereto as Exhibit 1. In its complaint, MGF made unfounded allegations against Windsor and filed a laundry-list of claims including Trademark Infringement under the Lanham Act, Unfair Competition under the Lanham Act, Unfair Competition under California Business and Professions Code § 17200, *et seq.*, Palming Off and Common Law Injury to Business Reputation.

In response, Windsor filed its answer which included various affirmative defenses and one counterclaim (the "Counterclaim") for fraud on the United States Patent & Trademark Office ("USPTO") with respect to one of MGF's pleaded marks, namely, United States Registration No. 1,953,489, for "MONTEREY PASTA COMPANY," registered for "pasta and sauces" (the "Registration").

As appears to be its standard practice, MGF subsequently filed a motion to dismiss the Counterclaim under Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss") as well as an "Anti-Slapp" motion. Windsor has responded to the "Anti-Slapp" motion in a separate document. As explained below, the Court should also deny MGF's Motion to Dismiss.

**LEGAL ARGUMENT**

MGF purported to file its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted; however, rather than telling the Court in a straightforward manner what it is about Windsor's allegations that fails to state a claim and

falls short of the pleading standard of Fed. R. Civ. P. 8(a)(2), MGF attempts to try the Counterclaim by motion through *judicial notice* as well as *unsubstantiated hypotheses* directed to the examining procedure of its Registration in the USPTO.

In response, Windsor will first address the standards of a 12(b)(6) motion as well as MGF's arguments with respect to this claim. Second, Windsor will attempt to address the remaining extraneous and irrelevant matter set forth in MGF's memorandum in support of its Motion to Dismiss.

**I.   Windsor's Counterclaim states a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and complies with the pleading standards set forth in both Fed. R. Civ. P. 8(a)(2) and (9)(b).**

Windsor brought its Counterclaim under 15 U.S.C. § 1120, which states in totality:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

Citing and applying this statute in a case with similar facts, the district court in *T.A.D. Avanti, Inc. v. Phone-Mate, Inc.*, 1978 WL 21444, 199 U.S.P.Q. 648 (C.D. Cal. 1978) made the following conclusion of law:

> An applicant for registration of a trademark is required to exercise uncompromising candor in his communications with the United States Patent and Trademark Office, lest any registration he obtains will be invalid and/or unenforceable. He must not only refrain from making false representations to the United States Patent and Trademark Office, but must make full disclosure of all facts to his knowledge which might bear in any way on the Office's decision to grant the registration sought.

U.S.P.Q. at 656.

As regards the pleading of such a claim, the notice pleading standard of Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claim." In addition, the fraud pleading standard of Fed. R. Civ. P. 9(b) only requires that "the circumstances constituting fraud or

Page 2                                                                    Case No. C08-01316 (JCS)

mistake shall be stated with particularity" but goes on to say, "Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

The elements for fraud on the USPTO are enumerated in *Federal Treasury Enterprise Sojuzplodoimport v. Spirts Int'l N.V.*, 425 F. Supp. 2d 458, 467-68 (S.D.N.Y. 2006): (1) false representation regarding material fact; (2) knowledge or belief that representation is false; (3) intention to induce listener to act or refrain from acting in reliance upon misrepresentation; (4) reasonable reliance upon misrepresentation; and (5) damage proximately resulting from such reliance. Windsor more than adequately pled each of these elements in its Counterclaim. As to the first element, Paragraph 8 of Windsor's Counterclaim states that "the USPTO was not made aware by Applicant of the geographically descriptive (or in the alternative geographically misdescriptive) nature of the term 'Monterey' during the prosecution of the Application." Paragraph 13 states "MGF knew or should have known of the fraud perpetrated on the USPTO," satisfying the second *scienter* element, which as previously noted, may be averred *generally*. As to the third and fourth elements, Paragraph 11 of Windsor's Counterclaim states, "The withholding of the geographically descriptive (or in the alternative geographically misdescriptive) and merely descriptive nature of the terms 'Monterey Pasta Company' from the USPTO constitutes fraud on the USPTO because the USPTO would not have granted a trademark registration for the terms 'Monterey Pasta Company' without proof of secondary meaning." Finally, Paragraph 14 of the Counterclaim addresses the damage caused by such reliance, stating that "Windsor has suffered, and continues to suffer, irreparable harm as a result of the fraud perpetrated on the USPTO. . ."

Based on the aforementioned authorities and the averments set forth in the Counterclaim, Windsor has clearly alleged facts sufficient to state a claim upon which relief can be granted under 15 U.S.C. § 1120 and has easily met the pleading standards of both Fed. R. Civ. P. 8(a)(2)

1  and Fed. R. Civ. P. 9(b).  Therefore, MGF's Motion to Dismiss based on Fed. R. Civ. P. 12(b)(6)

2  must be denied.

3      **II.    The arguments and requests for judicial notice set forth in MGF's Motion to
4          Dismiss are inappropriate at this stage of the proceeding and must be denied.**

5      As to the remaining material in its Motion to Dismiss, although MGF purports to request

6  dismissal based on Fed. R. Civ. P. 12(b)(6), the bulk of its supporting memorandum relies upon a

7  vast amount of improperly introduced extraneous information and baldly conclusive statements

8  that at times refer to Fed. R. Civ. P. 12(b)(6), at times to Fed. R. Civ. P. 9(b), and at other times to

9

10  Fed. R. Evid. 201, all the while resembling a motion for summary judgment.  Before any

11  discovery has occurred, this is not the time or the avenue for requesting that the Court make a

12  determination as to the ultimate validity of the Counterclaim.  Each of these issues is addressed

13  below in the order set forth in MGF's memorandum.

14      After first attempting to summarize its claims and Windsor's counterclaims, MGF cites

15  Fed. R. Evid. 201 and various cases for the uncontroversial proposition that the Court may take

16

17  judicial notice of trademark registrations.  However, the Ninth Circuit case relied upon by MGF,

18  *Metro. Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640-41 (9th Cir. 1993), held that

19  "*Certified* copies of trademark registrations from the principal register fall within this category [of

20  facts judicially noticeable under Fed. R. Evid. 201(b)(2))." [emphasis added].  MGF has failed to

21  properly authenticate (and Windsor objects to the admission of) the documentation underlying its

22  proposed facts by not complying with Fed. R. Civ. P. 44(a)(1)(B) (proof of official record), Fed.

23  R. Evid. 902(4) (self-authentication of public documents), or even Fed. R. Evid. 901(b)(1) (sworn

24

25  testimony of witness with knowledge).

26      MGF then goes on to cite everything from dictionaries to excerpts from the Wikipedia®

27  website.  Of course, MGF has not properly authenticated any of these documents by sworn

28  testimony either, and more importantly, even judicially noticed facts must still be *relevant*.

Page 4    Case No. C08-01316 (JCS)

**WINDSOR QUALITY FOOD COMPANY, LTD.'S OPPOSITON TO MOTION BY PLAINTIFF MONTEREY GOURMET FOODS,
INC., TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)**

*California v. Sup. Ct. of California, San Bernardino County*, 482 U.S. 400, 408 (1987) (noting that even if taking judicial notice otherwise proper, facts must still be relevant to issue before the court). MGF cites various dictionaries and web pages in an apparent attempt to get the Court to take judicial notice of the fact that Monterey, California and pasta have no relationship in the minds of consumers. It is curious that MGF would rely upon dictionaries for this assertion and even more strange that it would make the argument at all. In so doing, MGF merely drives home the fact that no secondary meaning can be ascribed to its use of the terms and therefore "Monterey" is merely geographically descriptive and not subject to trademark protection, either now or at the time the application was filed.

For purposes of trademark law, a term merely describing the geographic origin of a product will not receive trademark protection absent proof of secondary meaning. *See* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 14:9, at 14-32 (4th ed. 2008). MGF goes out of its way to try to prove that it is impossible for Monterey pasta to have acquired a secondary meaning (and thus deserving of trademark protection) because, according to dictionaries and the internet web pages it asks the Court to recognize, no one has ever associated Monterey with pasta. Perhaps MGF is attempting to prove that its use of the term "Monterey" was completely arbitrary, but this seems inconsistent in light of the fact that in Paragraph 6 of its very own Complaint, MGF states that it has a principal place of business in Monterey County, California and in its Motion to Dismiss, MGF argues that the USPTO somehow knew of this geographical association in the examining process, even though the application for the Registration in the database records upon which MGF relies make no mention of the fact that the trademark owner's business is located in Monterey.

MGF then makes what amounts to its primary argument – that it filed an Incontestability Declaration on November 13, 2001 and, therefore, the mark is no longer contestable based on a

Page 5    Case No. C08-01316 (JCS)

WINDSOR QUALITY FOOD COMPANY, LTD.'S OPPOSITON TO MOTION BY PLAINTIFF MONTEREY GOURMET FOODS, INC., TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)

claim of descriptiveness or misdescriptiveness. The Counterclaim is based upon *fraud on the United States Patent and Trademark Office*. As is set forth in 15 U.S.C. § 1115 and as the Courts have recognized, "Fraud on the Patent and Trademark Office is an exception to incontestability and grounds for canceling a registration." *Federal Treasury Enterprise Sojuzplodoimport v. Spirits Int'l N.V.*, 425 F. Supp. 2d 458, 467 (S.D.N.Y. 2006). The geographically descriptive nature of the term "Monterey" was not the counterclaim itself, but rather the fact that the nature of the mark was misrepresented or not disclosed to the USPTO.

MGF's second main argument, that the allegations of the Counterclaim do not meet the requirements of Fed. R. Civ. P. 9(b), which requires that fraud be alleged with particularity, was controverted in the first part of this memorandum and the fact that MGF had fair notice of the claim is further bolstered by the authority cited by MGF itself in this portion of its memorandum. MGF correctly cites the language of *Stack v. Lobo*, 903 F. Supp. 1361, 1367 (N.D. Cal. 1995), although it neglects to mention the case was a class action securities fraud case, a type of suit that has since merited special pleading requirements under the Private Securities Litigation Reform Act. In fact, even the case relied upon by the *Stack* court, *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1980), involved claims under Section 10(b) and Rule 10b-5 and the application of Rule 9(b) thereto.

In addition, the *Stack* court held that "Rule 9(b) does not necessitate pleading of detailed evidentiary matter." *Stack*, 903 F. Supp. at 1367. Rather, the focus, as it always is at the pleading stage, remains upon giving the opposing fair notice of the claim against it. The *Stack* court held, "The plaintiff must include statements regarding the time, place and nature of the alleged fraudulent activities, and must specifically identify what was misrepresented or concealed *so as to give the opposing party notice of the particular conduct which is alleged to constitute the fraud.*" *Id.* [emphasis added]. The last thing MGF can argue is that it does not have notice of the conduct

Page 6    Case No. C08-01316 (JCS)

WINDSOR QUALITY FOOD COMPANY, LTD.'S OPPOSITON TO MOTION BY PLAINTIFF MONTEREY GOURMET FOODS, INC., TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)

alleged to constitute fraud as it devoted almost its entire brief to addressing why it believed its actions did not constitute fraud.

As concerns *eCash Technologies, Inc. v. Guagliardo*, 127 F. Supp. 2d 1069 (C.D. Cal. 2000), the case had nothing to do with the application of Fed. R. Civ. P. 9(b). Rather, the court dismissed the claim for fraud in procurement of the trademark based upon its legal conclusion that "a registration applicant has no duty to investigate and report to the PTO all other possible users of the same or a similar mark." MGF urges no such applicable legal principle here. Rather, it merely located one reported opinion that dismissed a counterclaim of fraud on the USPTO from another judicial district in this State, and urges the Court to dismiss Windsor's counterclaim as well apparently for no other reason than it was a similar claim in the same state.

As for Fed. R. Civ. P. 9(b), MGF is incorrect in its conclusions as to Windsor's insufficiency in pleading. MGF says that Windsor had to allege the "time, place and nature of the alleged fraudulent activities" in order for MGF to have fair notice of the counterclaim. MGF need only look to paragraphs 9-14 of the Counterclaim to gain an understanding of these precise averments. It is aware of the *time* the application was made, June 17, 1994, as well as the subsequent prosecution period; these allegations are set forth in Paragraph 12 of the Counterclaim and reflected in MGF's own memorandum in support of its Motion to Dismiss. As for the place, the application was filed in the USPTO as alleged in Paragraph 9 of the Counterclaim. As to the nature of MGF's fraudulent activities, Windsor alleged, "The withholding of the geographically descriptive (or in the alternative geographically misdescriptive) and merely descriptive nature of the terms "Monterey Pasta Company" from the USPTO constitutes fraud on the USPTO" in Paragraph 11 of the Counterclaim. Apparently, this information gave MGF fair notice of the fraud allegations. In submitting to the Court the documents contained in its request for judicial notice, MGF is apparently keenly aware of the nature of the claims. In fact, nearly its entire

Page 7

Case No. C08-01316 (JCS)

WINDSOR QUALITY FOOD COMPANY, LTD.'S OPPOSITON TO MOTION BY PLAINTIFF MONTEREY GOURMET FOODS, INC., TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)

memorandum in support of its Motion to Dismiss is devoted to addressing these allegations. Generally, when a party files a motion under Fed. R. Civ. P. 9(b), the idea is that the allegations of fraud in the complaint have not given it fair notice of the claim and it should not be required to respond absent a more definite statement. Here, not only has Windsor pleaded the Counterclaim with particularity, MGF seems to understand the claim perfectly.

MGF next argues that dismissal is warranted because the allegation that Monterey Pasta Company is a geographically descriptive term is a conclusion of law. However, the factual allegations made by plaintiff in its own complaint show that Monterey Pasta Company is a geographically descriptive term.

MGF then makes the argument that there is no allegation of scienter, completely ignoring Paragraph 13 of the Counterclaim. Maybe, what MGF meant to say was that there was no "particularized" allegation of scienter. However, this is not a securities fraud case. MGF cites no authority for the proposition that Fed. R. Civ. P. 9(b) requires particularized allegations of scienter. In fact, Fed. R. Civ. P. 9(b) on its face states that with respect to all averments of fraud, "Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

MGF next argues, "It is hornbook law that only where a geographic name creates a goods-place association among the relevant purchasing public that it can possibly be geographically descriptive or misdescriptive." (Motion at 9-10). Not only is this issue an obvious question of fact, it is not clear what exactly MGF is trying to say. The rule at which it appears to be aiming was more aptly stated by the court in the case MGF cites, *Kraft General Foods, Inc. v. BC-USA, Inc.*, 840 F. Supp. 344, 349 (E.D. Pa. 1993), in which the court dealt with "Philadelphia" cream cheese:

> The trademark at issue in this case is "Philadelphia," a geographic designation. *A term that is descriptive of the geographic location of origin of goods is not inherently distinctive, i.e. arbitrary or suggestive, and is usually protected only upon proof that it has*

Page 8                                                                   Case No. C08-01316 (JCS)

> *acquired secondary meaning. If the geographic term is used in an arbitrary manner, however, taking into account the type of goods involved, then no secondary meaning is required.* 1 McCarthy, § 14:03.

Upon review of the "hornbook law" cited by MGF, *McCarthy on Trademarks and Unfair Competition* suggests three relevant questions to aid in determining if a geographic term is used arbitrarily. First, is the mark the name of the place or region where the product is produced? If not, the mark is probably arbitrary. Second, is the geographic term likely to denote to reasonable buyers that the goods come from the place named? If not, this is another indication of arbitrariness. Finally, is the place noted for these particular goods? If not, this is a final indication of arbitrariness. 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 14:29, at 14-77-14-80 (4th ed. 2008).

MGF apparently believes (although it never comes right out and says it) that its own use of the term "Monterey" was arbitrary; however, under the very authority cited by MGF, this determination cannot be made in MGF's favor at this (and Windsor believes at any) stage of the litigation. Applying the first question from the "hornbook law" cited by MGF, Monterey is the county in which the corporation is located according to MGF's own factual statements in its complaint. Therefore, MGF's mark *is admittedly* geographically descriptive based on this first inquiry. In regard to the second question, whether the use of the term connotes to reasonable buyers that the goods came from Monterey, California, MGF as much as says this in its proposed Fact No. 5 in its Motion to Dismiss at pages 3-4 of which it asks the Court to take judicial notice citing "a label specimen for the mark from [Monterey's] predecessor (MPC), upon which was printed an association between the label and the City of Monterey, California . . ." Finally, most of MGF's evidence is directed solely to the third inquiry – an attempt to show that use of "Monterey" was arbitrary because Monterey is not widely known for its pastas and sauces.

Page 9   Case No. C08-01316 (JCS)

WINDSOR QUALITY FOOD COMPANY, LTD.'S OPPOSITON TO MOTION BY PLAINTIFF MONTEREY GOURMET FOODS, INC., TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)

However, this factor as well as the second factor, cannot be judicially noticed and must be the subject of discovery and proof before such an important legal determination can be made.

As to the third and final argument in its memorandum, i.e., that judicially cognizable facts demonstrate that the USPTO knew of the association of the trademark applicant with Monterey at the time MGF's predecessor filed the application, MGF has not only improperly attempted to enter into the record insufficient, irrelevant evidence and uncertified and incomplete documents scanned from portions of the records of the USPTO database without proper certification or authentication, it baldly imputes numerous assumptions into the thought processes, investigations and considerations of the examining attorney that simply are not factual. What it fails to mention is that at the time the "intent to use" application was filed with supporting declaration, the address was listed as Danville, California and not as Monterey, California. With regard to Registration No. 1,664,278 (a canceled registration) that MGF cites in its brief and relies upon for its assertion that the examining attorney somehow knew of the association between its mark and Monterey, California, the file history is not publicly available for the file history of this mark; morever, the document relating to the recordation of this registration in the file history of the Registration at issue states that the owner of this mark is located in Danville, California and not in Monterey, California.

In its memorandum, MGF argues that attention was specifically called to the association between the application and the city of Monterey because of a circled notation in a scanned copy of a specimen found in the USPTO online records. What MGF fails to mention is that there is no record of who made the notation, much less when or why it was made. Files of the USPTO were not scanned into the database and made available for public viewing until many years after this application for Registration. Furthermore, even though MGF alleges to have used the mark at the time its application for Registration was made, this application was filed and subsequently

examined on an "intent to use" basis and only later amended to a use based application, with the specimen being filed approximately ten months after the original application and examination was made. Therefore, as for the notion that the USPTO did or did not reach a determination as to the geographical descriptiveness of the term Monterey, this is obviously a disputed question of fact.

## CONCLUSION

In sum, this "Motion to Dismiss" that at times refers to Fed. R. Civ. P. 12(b)(6), at times to Fed. R. Civ. P. 9(b), and at other times to Fed. R. Evid. 201, yet all the while resembling a motion for summary judgment before any discovery has occurred, is inappropriate at this stage of the proceeding. Windsor's Counterclaim states a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and complies with the pleading standards set forth in both Fed. R. Civ. P. 8(a)(2) and (9)(b). As for the extraneous material in MGF's memorandum, this is simply not the proper stage of the proceeding to request that the Court make a determination as to the ultimate validity of the Counterclaim. Windsor respectfully requests that MGF's Motion to Dismiss be denied. Should the Court be inclined to grant MGF's motion, Windsor respectfully requests that it be granted leave to amend its Counterclaim.

Windsor also asks the Court to deny MGF's request for judicial notice because the "facts" for which MGF requests notice are not relevant to the pending motions and are not appropriate for judicial notice.

Dated: May 16, 2008

McAfee & Taft A Professional Corporation
By: _____S/_____
    Robert W. Dace
    Jennifer B. Rader
Attorneys for Defendant
WINDSOR QUALITY FOOD COMPANY, LTD.

Page 11

Case No. C08-01316 (JCS)

WINDSOR QUALITY FOOD COMPANY, LTD.'S OPPOSITON TO MOTION BY PLAINTIFF MONTEREY GOURMET FOODS, INC., TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)

