1  John H. Patton, Cal. SBN 069261
   Kathryn J. Allen, Cal. SBN 196544
2  Matthew T. Homan, Cal. SBN 250458
   SHAPIRO BUCHMAN PROVINE & PATTON LLP
3  1333 North California Boulevard, Suite 350
   Walnut Creek, CA 94596
4  Telephone:  (925) 944-9700
   Facsimile:   (925) 944-9701
5  E-mail:  jpatton@sbllp.com

6  Attorneys for Plaintiff and Counterdefendant
   Monterey Gourmet Foods, Inc.
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  MONTEREY GOURMET FOODS,          No.  C08-01316 (JCS)
    INC., a Delaware corporation,
12                                   Case assigned for all purposes to
                Plaintiff,           Hon. Joseph C. Spero
13
    vs.                             MEMORANDUM OF POINTS AND
14                                   AUTHORITIES IN REPLY TO
    WINDSOR QUALITY FOOD             OPPOSITION TO COUNTERDEFENDANT
15  COMPANY LTD., a Texas Limited    MONTEREY GOURMET FOODS, INC.'S
    Partnership; and DOES 1 through 20,  SPECIAL MOTION TO STRIKE
16  inclusive,                       COUNTERCLAIM OF WINDSOR
                                     QUALITY FOOD CO., LTD.
17              Defendants.          [Cal. Code of Civ. Pro. § 425.16]

18                                   Date:  August 15, 2008
                                     Time:  1:30 p.m.
19                                   Courtroom A (Hon. Joseph C. Spero)
                                     Trial Date:  Not Set
20
                                     Related Papers:  Companion Reply re
21                                   Motion to Dismiss; Reply Declaration of
                                     Kathryn J. Allen
22  ────────────────────────────────
    AND RELATED COUNTERCLAIM.
23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff and counterdefendant Monterey Gourmet Foods, Inc. ("MGF") respectfully submits the following memorandum of points and authorities in reply to the opposition of defendant and counterclaimant Windsor Quality Food Company, Ltd. ("Windsor") to MGF's special motion to strike Windsor's counterclaim pursuant to Section 425.16 of the California Code of Civil Procedure.

## I.    PRELIMINARY STATEMENT

Windsor has not submitted a shred of evidence to substantiate its fraud claim against MGF.  That is because it has *none*.  Rather, in an effort to keep that hollow claim alive for tactical use in this litigation, and knowing that it has no evidence that it could present to this Court on the merits, Windsor states that it need not present any evidence because its fraud claim supposedly presents what it calls a "federal question."  MGF strongly disagrees -- the counterclaim presents nothing more than a common law fraud case.

## II.    STATEMENT OF THE RELEVANT FACTS

The facts pertinent to this motion are contained in the pleadings (MGF's Complaint and Windsor's counterclaim), the Declaration of Scott S. Wheeler, and in judicially noticeable facts (see MGF's accompanying Request for Judicial Notice ("RJN")).  FRE Rule 201(d).[1]  They are well-summarized in pages 2-6 of MGF's Memorandum of Points and Authorities filed in support of this motion.

Windsor does not and cannot dispute these facts, conceding that its fraud

---

[1]    Under Rule 201(d) of the Federal Rules of Evidence, a court shall take judicial notice if requested by a party and supplied with the necessary information.  The court may judicially notice official acts of government agencies or departments. *See, e.g., National Audubon Soc. v. Dept. of Water & Power of City of Los Angeles,* 496 F.Supp. 499, 503 (E.D.Cal. 1980).  Similarly, judicial notice may be taken of officially maintained government publications, such as the USPTO's Trademark Electronic Search System ("TESS") and Trademark Document Retrieval ("TDR").  *See, e.g., Austracan (U.S.A.) Inc. v. Neptune Orient Lines, Ltd.,* 612 F.Supp. 578, 584-85 (S.D.N.Y. 1985).  A district court is, of course, empowered to take judicial notice of trademark registrations with the USPTO.  *Metro Pub., Ltd. v. San Jose Mercury News,* 987 F.2nd 637, 640-41 (9th Cir. 1993).  *See also* Reply Declaration of Kathryn J. Allen submitted herewith.

1

1  counterclaim is a complete hoax.  Rather, it tells this Court that it cannot reach the merits

2  of that claim, or the lack thereof, at this stage of the action, because of the alleged

3  "federal question" posed by its counterclaim.   But when one actually looks at the claim

4  itself, and not the label placed on it, or the jurisdiction conferred on this Court by the

5  Lanham Act (a separate matter from what the claim is about), Windsor's fraud claim is

6  nothing more than a garden variety common law claim involving no special federal

7  matters.  When viewed against the broad remedial intent behind the anti-SLAPP statute,

8  to free California-based citizens from tactical claims based on protected activity (which is

9  what Windsor basically admits it is doing), it is submitted that the Court should apply the

10  statute to the fraud claim in this case, and grant the motion.  Cal. Code of Civ. Pro. §

11  425.16(a).[2]  Windsor should not be permitted to dress up an ordinary fraud claim, one for

12  which it obviously has *no evidence*, as a federal question, in order to continue what is

13  nothing more than a tactical ploy designed to deflect attention from its acts of

14  infringement.

15

16  ### III.   LEGAL ARGUMENT

17  **A.   The purpose and application of California's anti-SLAPP Statute.**

18  Some 15 years ago, California passed a statute designed to protect parties from

19  meritless claims arising from exercise of constitutional rights of free speech or petitioning

20  the government to act.  C.C.P. § 425.16; *Metabolife Intn'l., Inc. v. Wornick*, 264 F.3rd

21  832, 839-40 (9th Cir. 2001); *Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29

22  Cal.4th 53, 59-62.  Such claims are known as Strategic Lawsuits Against Public

23  Participation, or "SLAPP suits," and the statute is commonly referred to as the "anti-

24  SLAPP statute."  Moreover, the coverage of the anti-SLAPP statute is broad -- where

25  [2]     The remedial intent of the anti-SLAPP statute is codified in Subpart (a), which states: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought

26  primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to

27  encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be

28  construed broadly."

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

1    there are multiple factual allegations in a claim, the statute applies even if only one of the

2    allegations concerns protected conduct. *Fox Searchlight Pictures, Inc. v. Paladino*

3    (2001) 89 C.A.4th 294, 308.

4        2.    **The anti-SLAPP statute can apply to federal cases.**

5        The statute is not limited in scope or application to the California state courts.

6    California's anti-SLAPP statute primarily embodies substantive law, and thus applies to

7    federal cases. *See, e.g., United States ex rel. Newsham v. Lockheed Missiles & Space*

8    *Co.*, 190 F.3rd 963, 972-73 (9th Cir. 1999). Whenever possible, the courts, including the

9    federal courts, should interpret the First Amendment and the anti-SLAPP statute in a

10    manner favorable to the exercise of freedom of speech, not to its curtailment. *Mello v.*

11    *Great Seneca Financial Corp.*, 526 F.Supp.2nd 1024, 1028 (C.D.Cal. 2007).

12        3.    **While the Federal Courts are afforded jurisdiction over Windsor's**
        **counterclaim, that does not change the nature of the underlying**
13        **counterclaim, which is nothing more than a common law fraud claim.**

14        Windsor asserts that its counterclaim raises a "federal question," because, as it

15    tells us at page 2 of its opposition, this case is brought under 15 U.S.C. § 1120 (Section

16    38 of the Lanham Act). [Opposition Brief, 2:11-15.] Section 38 of the Lanham Act

17    provides:

18        "Any person who shall procure registration in the Patent and Trademark
        Office of a mark by a false or fraudulent declaration or representation,
19        oral or in writing, or by any false means, shall be liable in a civil action by
        any person injured thereby for any damages sustained in consequence
20        thereof."

21        But there is nothing magical or particularly "federal" about such a civil action. It is

22    an action for fraud, which arises from common law principles. As has been repeatedly

23    recognized since *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817 (1938), there is no

24    federal common law, nor any federal common law of torts, such as fraud. *See, e.g., U.S.*

25    *v. United Airlines, Inc.,* 216 F.Supp. 709, 719 (E. D. Wash. 1962); *Gabel v. Hughes Air*

26    *Corp.,* 350 F.Supp. 612, 621 (C.D. Cal. 1972). Thus, the Courts, including this Court,

27    will look to state common law principles (in this case California) for the law on fraud,

28    which is the entire basis for the counterclaim. The substantive law on this claim will and

1  must ultimately come entirely from California-based common law.[3]  A quick reading of

2  the section above confirms that this must be so, since Section 38 of the Act tells us

3  nothing about what is required to obtain such relief, other than proving the procurement

4  of a trademark *by false or fraudulent declaration or representation.*  Again, we are

5  ultimately looking to common law, which is the preserve of the individual states, not the

6  federal courts.

7      MGF certainly agrees that this Court does have jurisdiction to adjudicate

8  Windsor's counterclaim (something MGF is asking that the Court do on this very motion).

9  Such jurisdiction is conferred under 15 U.S.C. § 1121 (Section 39 of the Lanham Act).

10  But that jurisdiction is *not exclusive* to the federal courts, and the several states also

11  have jurisdiction to adjudicate trademark disputes.  *See, e.g., Smail v. Sanders* (1889)

12  118 Ind. 105, 20 N.E. 296, 296-97; *Leidsdorf v. Flint,* 15 F.Cas. 260, 262 (Wisc. Cir. Ct.

13  1878), both citing to *In re Trademark Cases,* 100 U.S. 82, 96-99, 1879 WL 16583

14  (1879), nullifying an act by Congress attempting to confer exclusive jurisdiction upon the

15  federal courts in trademark cases.  So the fact that this Court has non-exclusive

16  jurisdiction does not automatically convert the case into a "federal question" case.

17      And a quick review of Windsor's counterclaim reveals that there is nothing of

18  federal substantive law involved here; we are looking at an ordinary garden variety of

19  fraud claim.  True, the so-called unwitting victim was the public, acting through the

20  USPTO, but that doesn't really change the equation.  Windsor is still required to prove,

21  and this Court is still required to determine, each element of a fraud case in accordance

22  with substantive common law principles governing fraud claims.

23      Windsor cites to *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC,* 2007 WL

24  2122638 (N.D.Cal. 2007) for the proposition that its counterclaim constitutes a "federal

25  question."  MGF and its counsel are indeed well-familiar with the *Sonoma Foods* case

26  (Sonoma Foods is a subsidiary of MGF).  There are several things about that case that

27  [3]   Of course, the Court can and should also look to federal cases applying California

28  substantive law, and MGF does not mean to suggest otherwise.  But ultimately, and unless based upon a particular federal statute (*e.g.,* RICO) federal cases on fraud are engendered from common law principles arising from the laws of the several states.

4

1    bear mention in this reply.  First, the District Court did in fact partially grant the anti-

2    SLAPP motion (and awarded legal fees to the moving party).  Second, the claims that

3    the Court decided would not be subject to the anti-SLAPP motion were, for the most

4    part, not common law tort claims, such as we have here, but rather trademark

5    infringement and false designation/dilution claims under 11 U.S.C. § 1125(a) (Section 43

6    of the Lanham Act).  Ostensibly, the District Court in *Sonoma Foods* very likely believed

7    that those claims were so permeated by federal trademark principles as to take them out

8    of the realm of state common law.  And, to the extent the District Court lumped the

9    fraudulent registration claims (which were immediately dropped by the plaintiff on further

10   amendment) in with the infringement claims, MGF respectfully submits that the Court

11   was incorrect, particularly given the fact that federal jurisdiction under 15 U.S.C. § 1121

12   is not exclusive, as discussed in the cases above.[4]

13
          4.     **The statute of limitations analysis applicable on its face to Windsor's
                 claim under 15 U.S.C. § 1120, entirely resorts to state law principles,**
14               **and thus presents no "federal question."**

15        There is another important distinction between our case and *Sonoma Foods*, and

16   reason that this Court can and should reach the merits of MGF's anti-SLAPP motion at

17   the upcoming hearing.  That is because Windsor, in proclaiming that its claim is brought

18   under 15 U.S.C. § 1120, has subjected that claim to a statute of limitations defense on

19   the face of the pleadings.  By the allegations of Windsor's counterclaim, the alleged

20   fraud on the USPTO had to have occurred at least twelve years ago, because the

21   registration that is the subject of the counterclaim (*Monterey Pasta Company*®) was

22   issued January 30, 1996.

23        The Lanham Act *has no statute of limitations.*  Thus, the issue of the statute of

24   ――――――――――
     [4]     While MGF and its counsel have a great deal of respect for Judge White and his handling
25   of the *Sonoma Foods* case, it is submitted that the decision there as to whether the claims
     involved substantive federal rights is of little or no precedential value here, where the *Sonoma*
26   *Foods* case has now settled, and will forthwith be dismissed without trial, and there will never be
     a review or determination of the propriety of those rulings.  Indeed, there could not have been
27   such a review or determination, because the counterclaimant in *Sonoma Foods* promptly
     amended its counterclaim after Sonoma Foods' motion to strike was partially granted, and
28   companion motion to dismiss was granted under Rule 12(b)(6), *and abandoned all allegations of*
     *fraud on the USPTO* in its amended pleading.

                                                            5

1   limitations is also a substantive matter governed by state law, and the closest state

2   statute is used.  McCarthy on Trademarks and Unfair Competition ("McCarthy") § 31.85,

3   citing *Official Airline Guides, Inc. v. Goss,* 6 F.3rd 1385, 1395 -96 (9th Cir.1993).  So the

4   determination of the merits of that defense, *one raised on the face of the pleadings,*

5   cannot involve any "federal question."

6           Turning to substantive principles of state law, the *Official Airline Guides* case, like

7   this one, was a cancellation action brought pursuant to Section 38 of the Lanham Act.

8   The Ninth Circuit squarely held that a counterclaim for cancellation pursuant to Section

9   38 arises on the date of the alleged fraud on the PTO, the date "when [the applicant]

10  procured the registration by using allegedly false statements."  6 F.3rd 1396.  Applying

11  Oregon state law for the statute of limitations, the Ninth Circuit ruled that the claim was

12  barred because filed more than two years after the registration issued.[5]

13          This Court will, of course, apply the California statute of limitations in analyzing

14  the defense on this motion (and the companion motion to dismiss).  California's statute

15  of limitations is three years for fraud (Cal. Code of Civ. Pro. § 338).  Obviously, Windsor

16  could have brought a separate action against MGF on January 30, 1996, when MGF

17  procured the registration by allegedly using false statements or nondisclosures.  Instead,

18  Windsor has waited until April 14, 2008, more than twelve years after the cause of action

19  accrued. This Court can properly dismiss as time-barred Windsor's counterclaim, and

20  can do so without addressing any purported "federal question."  *Official Airline Guides,*

21  *supra,* 6 F.3rd 1395-96.  Given the remedial intent of California's anti-SLAPP statute, and

22  its stricture that it should be interpreted and applied broadly, this Court should not

23  decline to reach the merits of the statute of limitations defense based upon a hollow

24  claim that this counterclaim presents a "federal question."

25  _____

26  [5]      Oregon's statute of limitations for fraud, like California's, is based upon discovery of the
    fraud.  ORS 12.110.  Of course, since the whole point of trademark registration is to impart to the
27  world notice of a trademark, Windsor, like the plaintiff in *Official Airline Guides,* was put on
    conctructive notice of the registration of *Monterey Pasta Company*® with its registration on
28  January 30, 1996.  15 U.S.C. § 1072; *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar,*
    179 F.3rd 1244, 1249 (9th Cir. 1999).

## IV.    CONCLUSION

It is obvious that Windsor has no case for fraud on the USPTO, and is doing everything it can to have the Court defer analysis of the counterclaim, or the dearth of facts and evidence to support it.  The fact that the Court has non-exclusive jurisdiction under the Lanham Act does not convert an ordinary common law fraud claim into a "federal question."  It is respectfully submitted that no "federal question" is truly presented here, and the Court can and should apply California's anti-SLAPP statute to now dispose of this specious claim, as was intended by the California Legislature.

Dated:  June 5, 2008

Respectfully Submitted,

SHAPIRO BUCHMAN PROVINE & PATTON, LLP

By: _____
John H. Patton, Cal. SBN 069261
Attorneys for Plaintiff and Counterdefendant
Monterey Gourmet Foods, Inc.

209029.1