John H. Patton, Cal. SBN 069261
Kathryn J. Allen, Cal. SBN 196544
Matthew T. Homan, Cal. SBN 250458
SHAPIRO BUCHMAN PROVINE & PATTON LLP
1333 North California Boulevard, Suite 350
Walnut Creek, CA 94596
Telephone: (925) 944-9700
Facsimile: (925) 944-9701
E-mail: jpatton@sbllp.com

Attorneys for Plaintiff and Counterdefendant
Monterey Gourmet Foods, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTEREY GOURMET FOODS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WINDSOR QUALITY FOOD COMPANY LTD., a Texas Limited Partnership; and DOES 1 through 20, inclusive,<br><br>Defendants.<br><br>_____<br><br>AND RELATED COUNTERCLAIM. | No. C08-01316 (JCS)<br><br>Case assigned for all purposes to Hon. Joseph C. Spero<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTERDEFENDANT MONTEREY GOURMET FOODS, INC.'S MOTION TO DISMISS COUNTERCLAIM OF WINDSOR QUALITY FOOD COMPANY, LTD. [FRCP RULE 12(b)(6)**<br><br>Date: August 15, 2008<br>Time: 1:30 p.m.<br>Courtroom A (Hon. Joseph C. Spero)<br>Trial Date: Not Set<br><br>Accompanying Papers: Declaration of Kathryn J. Allen; Companion Reply on Special Motion to Strike |

Plaintiff and Counterdefendant Monterey Gourmet Foods, Inc. ("MGF")

respectfully submits the following memorandum of points and authorities in reply to the

opposition filed by Windsor Quality Food Company, Ltd. ("Windsor") to MGF's

alternative motion to dismiss the counterclaim of pursuant to FRCP Rule 12(b)(6).[1]

---

[1] This motion accompanies MGF's special motion to strike the counterclaim, and is in the alternative to that motion. If the special motion to strike is granted, this motion becomes moot.

# TABLE OF CONTENTS

Page(s)

I. PRELIMINARY STATEMENT ................................................................................1

II.    THE GIST OF WINDSOR'S COUNTERCLAIM ...................................................1

III.    LEGAL ARGUMENT .........................................................................................2

    A.    Windsor's counterclaim fails to explain how MGF's alleged actions
        were in any way fraudulent, or relied upon by the USPTO. ......................2

        1.    The pleading requirements for a fraud claim....................................2

        2.    The allegation of "descriptiveness" is mere conclusion...................3

        3.    No facts are alleged to plead fraudulent acts or intent. ..................5

        4.    Windsor merely assumes reliance and causation. ...........................7

        5.    On its face, Windsor's fraud claim is time-barred............................8

    B.    Windsor's opposition seeks to hide the truth from this Court,
        truth that is properly considered on a motion to dismiss, and
        truth that is fatal to Windsor's counterclaim on such a motion. ..................9

        1.    The Court can properly consider judicially noticeable
            facts on  a motion to dismiss under FRCP Rule 12(b)(6)................9

        2.    There is no requirement for certified copies of registrations...........10

        3.    The Court may also take judicial notice of other documents
            relevant to prove or disprove relevant subjects, such as
            incontestability, full disclosure to the PTO, and lack of
            geographical descriptiveness or misdescriptiveness. ....................11

IV.    CONCLUSION ................................................................................................13

209507.1

i

TABLE OF AUTHORITIES

PAGE(S)

CASES

*Alexander Dawson, Inc. v. National Labor Relations Board,*
  586 F.2d 1300 (9th Cir.1978)..................................................................10

*Avco Corp. v. Precision Air Parts, Inc.,* 676 F.2nd 494 (11th Cir.1982)............................8

*Bower v. Foster Farms Dairy,* 2007 WL 4258815, 3 (E.D.Cal. 2007)..............................8

*Branch v. Tunnell,* 14 F.3rd 449 (9th Cir. 1994) ...............................................10

*California Ass'n of Bioanalysts v. Rank,* 577 F.Supp. 1342 (C.D.Cal. 1983)................10

*California Cooler, Inc. v. Loretto Winery, Ltd.,* 774 F.2nd 1451 (9th Cir. 1985) .................5

*Davis v. Wakelee,* 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578 (1895) ............................8

*Decker v. Massey-Ferguson, Ltd.,* 681 F.2d at 114 ...............................................3

*Devaney v. Chester,* 709 F.Supp. 1255 (S.D.N.Y.1989) ........................................3

*Dial-A-Mattress Operating Corp.,* 841 F.Supp. at 1353. ......................................2

*Di Vittorio v. Equidyne Extractive Industries,* 822 F.2d at 1247.................................3

*eCash Technologies, Inc. v. Guagliardo,* 127 F.Supp.2nd 1069
  (C.D. Cal. 2000).................................................................................4, 6

*Federal Treasury Enterprize Sojuzplodoimport v. Spirits Int'l N.V.,*
  425 F.Supp.2nd 458 (S.D.N.Y. 2006) ..............................................2, 4, 5

*Forschner Group v. Arrow Trading Co.,* 30 F.3rd 348 (2nd Cir. 1994)....................4, 11

*Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002)..............................10

*Gay-Straight Alliance Network v. Visalia Unified School Dist.,*
  262 F.Supp.2nd 1088 (E.D.Cal. 2001)..........................................................9

*Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP,* 311 F.Supp.2nd 690
  (M.D.Tenn. 2004).................................................................................6

*Hana Financial, Inc. v. Hana Bank,* 500 F.Supp.2nd 1228 (C.D.Cal. 2007) ....................7

*Imperial Tobacco Ltd., Assignee of Imperial Group PLC v. Philip Morris,
  Inc.,* 899 F.2d 1575 (Fed. Cir.1990),..........................................................4, 12

*In re Read-Rite Corp.,* 335 F.3rd 843 (9th Cir. 2003) .........................................13

*In re Vantive Corp. Securities Litigation,* 283 F.3rd 1079 (9th Cir. 2002) ........................13

# TABLE OF AUTHORITIES
## (continued)

PAGE(S

*Intellimedia Sports, Inc. v. Intellimedia Corp.*, 43 U.S.P.Q.2nd 1203
(TTAB 1997) .................................................................................................7

*InterPetrol Bermuda Ltd. v. Kaiser Aluminum Intern. Corp.*,
719 F.2nd 992 (9th Cir. 1983) ........................................................................6

*Jablon v. Dean Witter & Co.*, 614 F.2nd 677 (9th Cir.1980) ...............................8

*Kash 'N Gold Ltd. v. Samhill Corp.*, 90 Civ. 1097, 1990 WL 196089
(S.D.N.Y. Nov.29, 1990) ............................................................................2, 3

*Kraft General Foods, Inc. v. BC-USA, Inc.*,  840 F.Supp. 344
(E.D. Pa. 1993) ..........................................................................................4, 11

*Mack v. South Bay Beer Distributors, Inc.*, 798 F.2nd 1279 (9th Cir. 1986) ....................13

*Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.*, 801 F.2d 13
(2d Cir.1986) ..................................................................................................7

*Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2nd 637 (9th Cir. 1993)...................10

*New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808 (2001) .................................10

*Official Airline Guides, Inc. v. Goss*, 6 F.3rd 1385 (9th Cir.1993). .................................8, 9

*Rissetto v. Plumbers and Steamfitters Local 343*,
94 F.3rd 597 (9th Cir. 1996)...........................................................................8

*Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir.1974) ...........................3, 6

*Segal v. Gordon*, 467 F.2d 602 (2d Cir.1972) .....................................................3

*Semegen v. Weidner*, 780 F.2nd 727 (9th Cir. 1985) ...........................................4

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir.1994).................................2, 5

*Sprewell v. Golden State Warriors*, 266 F.3rd 979 (9th Cir. 2001) ..............................4

*Stack v. Lobo*, 903 F.Supp. 1361 (N.D. Cal. 1995) ...............................................4

*Stern v. Leucadia National Corporation*, 844 F.2d 997 (2d Cir.1988).........................3, 6

*T.A.D. Avanti, Inc. v. Phone-Mate, Inc.*, 1978 WL 21444,
199 U.S.P.Q. 648 (C.D.Cal. 1978) .................................................................1

*United States v. Ritchie*, 342 F.3rd 903 (9th Cir. 2003) ........................................10

*Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755
(Cust. & Pat. App. 1982) ..............................................................................4, 12

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

iii

MOTION TO DISMISS COUNTERCLAIM – REPLY MEMORANDUM                    C08-01316(JCS)

TABLE OF AUTHORITIES
(continued)

PAGE(S

## STATUTES

15 U.S.C. § 1058...................................................................................................3

15 U.S.C. § 1065(c) .............................................................................................3

15 U.S.C. § 1120...............................................................................................1, 8

421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975)....................................3, 6

459 U.S. 1037, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982)......................................8

488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988).......................................3

California Code of Civil Procedure § 338 .........................................................9

## OTHER AUTHORITIES

3 J. Thomas McCarthy, Trademarks and Unfair Competition § 31.21(2)(a),
    at 31:96 (4th ed.2004)......................................................................................2

3 J. Thomas McCarthy, Trademarks and Unfair Competition § 31.85............8

5 Louisell & Mueller, Federal Evidence § 533 at 208-209 (1981)..................10

9 Wright and Miller, Federal Practice and Procedure, § 2433 at 388 (1971)............10, 11

Hawes & Dwight, Trademark Registration Practice,  § 16.6,
    pp. 16-11 (Thomson/West 2007) ..............................................................4, 12

Trademark Trial and Appeal Board Manual of Procedure § 307.02 ...........4, 12

Trademark Trial and Appeal Board Manual of Procedure § 309.03(c).......4, 12

## RULES

Federal Rule of Civil Procedure 9 .....................................................................2

Federal Rule of Civil Procedure 12(b)(6)...........................................................8

Federal Rule of Civil Procedure 44(c) ..............................................................10

Federal Rule of Evidence 901(b)(1) ..................................................................11

Shapiro Buchman
Provine & Patton LLP
Attorneys At Law
Walnut Creek

iv

1          I. PRELIMINARY STATEMENT

2          Realizing that it has not and cannot adequately plead a case for fraud, Windsor

3    practically stands on its head to avoid dismissal of its counterclaim.  It opposition, like its

4    counterclaim, studiously avoids mention of any *facts* that would support a claim that the

5    U.S. Patent and Trademark Office ("USPTO" or "PTO") was defrauded in granting MGF

6    registration for *Monterey Pasta Company*® back on January 30, 1996.  Rather, Windsor

7    attempts to deflect attention from its lack of a case, by questioning (but not refuting) the

8    authenticity of readily ascertainable matters that cannot be in dispute, and resorting to

9    the refrain that fraud pleadings count for nothing, and suggesting it would be premature

10   to assess their adequacy on a motion to dismiss.

11         But Windsor's opposition is a smokescreen.  On its face, and even without resort

12   to the judicially cognizable record, Windsor's counterclaim does not come close to

13   alleging the requisite facts to state a fraud claim, and in fact, affirmatively demonstrates

14   that one cannot be stated.  And when the record is considered, one which this Court can

15   properly consider on judicial notice, it is apparent that Windsor's fraud claim is not only

16   deficient, it is itself a hoax, and does not deserve to survive this motion to dismiss, or

17   warrant leave to amend.

18

19         II.    THE GIST OF WINDSOR'S COUNTERCLAIM

20         Windsor tells us that its counterclaim is brought under 15 U.S.C. § 1120 (Section

21   38 of the Lanham Act), entitling a party to bring a civil action for damages based upon

22   the procurement of a trademark registration by false means. [Opposition Brief, 2:11-15.]

23   It cites *T.A.D. Avanti, Inc. v. Phone-Mate, Inc.,* 1978 WL 21444, 199 U.S.P.Q. 648

24   (C.D.Cal. 1978) for the proposition that an applicant for registration of a trademark must

25   be truthful in its communications with the USPTO.  MGF agrees, but that proposition

26   begs the question of whether Windsor has adequately pleaded a case to demonstrate

27   that MGF was not truthful as to material matters leading to the registration of its mark.

28   *Avanti* has nothing to do with the standard of pleading required for a fraud case.

1

III.   LEGAL ARGUMENT

A.   **Windsor's counterclaim fails to explain how MGF's alleged actions were in any way fraudulent, or relied upon by the USPTO.**

1.   The pleading requirements for a fraud claim.

Even setting aside the matters which are judicially cognizable by the Court (discussed in Subpart B below), the fraud claim cannot withstand this motion to dismiss. Windsor seemingly invites examination of its counterclaim.  [Opposition Brief, 3:3-3:24.] In doing so, it correctly summarizes the requisite elements for a claim for fraud on the USPTO from *Federal Treasury Enterprize Sojuzplodoimport v. Spirits Int'l N.V.,* 425 F.Supp.2nd 458 (S.D.N.Y. 2006) ("the *Stoli* case"), as follows:

> "Plaintiffs must allege: (1) a false representation regarding a material fact; (2) knowledge or belief that the representation is false; (3) an intention to induce the listener to act or refrain from acting in reliance upon the misrepresentation; (4) reasonable reliance upon the misrepresentation; and (5) damage proximately resulting from such reliance. 3 J. Thomas McCarthy, Trademarks and Unfair Competition § 31.21(2)(a), at 31:96 (4th ed.2004); *Dial-A-Mattress Operating Corp.,* 841 F.Supp. at 1353."

> 425 F.Supp.2nd 467 -468.

What Windsor avoids mentioning, is the Southern District of New York's ruling as to *how* these elements must be pleaded:

> "Like all allegations of fraud, a claim that fraud has been committed on the Patent and Trademark Office must be pled with the particularity required by Federal Rule of Civil Procedure 9(b). See, e.g., *Kash 'N Gold Ltd. v. Samhill Corp.,* 90 Civ. 1097, 1990 WL 196089 (S.D.N.Y. Nov.29, 1990). The party pleading fraud on the Patent and Trademark Office must "specify the statements that [it] contends were fraudulent" and "explain why the statements were fraudulent." See *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994)."

> 425 F.Supp.2nd 468.

Indeed, the *Stoli* case partially relied upon New York state and district court law to grant the defendant's motions to dismiss for failure to state facts sufficient to maintain claims for fraud.  452 F.Supp.2nd 468-69, 473-74.  Further, it cited to another case that has important ramifications for Windsor's pleading.  In *Kash 'N Gold, Ltd. v. Samhill Corp.,* 1990 WL 196089 (S.D.N.Y. 1990), the district court dismissed a deficient

2

1   counterclaim while setting out the rules for pleading fraud on information and belief, *the*

2   *very heart of Windor's fraud theory (Paragraphs 9 and 10):*

3        "As a preliminary matter, it is well-established that fraud pleadings
    generally cannot be based on information and belief. *Stern v. Leucadia*

4   *National Corporation*, 844 F.2d 997, 1003 (2d Cir.1988) cert. denied, 488
    U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988); See also *Di Vittorio v.*

5   *Equidyne Extractive Industries*, 822 F.2d at 1247; *Segal v. Gordon*, 467
    F.2d 602, 608 (2d Cir.1972). However, it is also well-established that this

6   general rule should be interpreted to allow pleading fraud allegations on
    information and belief as to facts peculiarly within the opposing party's

7   knowledge. **In these circumstances the allegations must be
    accompanied by a statement of facts upon which the belief is**

8   **founded.** *Stern v. Leucadia National Corporation*, 844 F.2d at 1003;
    *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir.1974)

9   cert. denied, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).
    Therefore, since the defendant's counterclaim here has been pleaded on

10  information and belief, Answer at ¶ 36; Amended First Counterclaim at ¶
    10, **it must be accompanied by sufficient facts to support the claim.**

11  Neither the original counterclaim nor the proposed amended counterclaim
    add any facts specifically supporting the allegation of fraud on the part of

12  plaintiff in registering their use of the mark "COMO". The only allegations
    that are not based upon information and belief, paragraphs 4 and 5 of the

13  amended first counterclaim, only contain the general allegations that
    unidentified third parties had been using the "COMO" trademark prior to

14  the plaintiff's use. There are no names, no dates, no details which would
    provide the particulars demanded by the rule. The remainder of the

15  amended counterclaim is alleged on information and belief, except for
    paragraph 9 which merely contains a blanket allegation that plaintiff has

16  no exclusive right to the trademark "COMO". Such a general allegation
    has been found to be insufficient on its face according to the standard of

17  Rule 9(b). *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d at 114
    **(Conclusory allegations that conduct was fraudulent or deceptive**

18  **are not enough**). Thus the amended counterclaim entirely fails to cure
    the lack of particularity in the original claim. See *Devaney v. Chester*, 709

19  F.Supp. 1255, 1260 (S.D.N.Y.1989).

20  *Kash N' Gold, Ltd. v. Samhill Corp.* 1990 WL 196089, 2 (S.D.N.Y. 1990)
    (bold emphasis added).

21

22      2.   The allegation of "descriptiveness" is mere conclusion.

23      Windsor's counterclaim suffers from the same factual vacuum.  Paragraph 8

24  pleads nothing more than Windsor's unsupported legal assumption that the term

25  *Monterey Pasta Company*® is "descriptive" or alternatively, "misdescriptive" (for

26  convenience, these grounds are combined under the term "descriptiveness").  First, the

27  time for Windsor to challenge this trademark on these grounds has long since come and

28  gone.   15 U.S.C. §§ 1058, 1065(c).  Where, as here, "the registration is five or more

3

1  years old," the registration is incontestable and the "descriptiveness" grounds Windsor

2  complains of do not apply, and may not be asserted to cancel such a mark.  *See, e.g.,*

3  Hawes & Dwight, *Trademark Registration Practice*, § 16.6, pp. 16-11, 16-12

4  (Thomson/West 2007); Trademark Trial and Appeal Board Manual of Procedure

5  ("TBMP") §§ 307.02, 309.03(c).  Nor can a party seeking cancellation of an incontestable

6  mark use grounds no longer available under the guise of some other available ground,

7  which is exactly why Windsor now seeks to make up a fraud claim.  *See, e.g., See, e.g.,*

8  *Imperial Tobacco Ltd., Assignee of Imperial Group PLC v. Philip Morris, Inc., supra*, 899

9  F.2d 1575, 1580 (Fed. Cir.1990), citing *Wallpaper Mfrs., Ltd. v. Crown Wallcovering*

10  *Corp., supra*, 680 F.2d 755, 765-66 (Cust. & Pat. App. 1982).

11      Just as importantly, *no facts* are alleged to demonstrate that the composite term is

12  geographically "descriptive" or "misdescriptive," or how it is, because no such facts

13  exist.[2]  The Court can and should ignore such conclusions on a motion to dismiss.  *See,*

14  *e.g., Sprewell v. Golden State Warriors*, 266 F.3rd 979, 988 (9th Cir. 2001); *see also*

15  *Stack v. Lobo*, 903 F.Supp. 1361, 1367 (N.D. Cal. 1995), citing *Semegen v. Weidner*,

16  780 F.2nd 727, 731 (9th Cir. 1985) (holding that general conclusory allegations of fraud

17  are insufficient); *see also, eCash Technologies, Inc. v. Guagliardo*, 127 F.Supp.2nd 1069,

18  1079 (C.D. Cal. 2000) (fraud disfavored in trademark).  Conclusory allegations are

19  simply a nullity.  Moreover, Windsor's conclusion of "descriptiveness," and that is all that

20  it is, forms the complete underpinning for its fraud claim, which is no more than further

21  surmise and conjecture based upon this conclusory and factually-devoid assumption.[3]

---

22  [2]    For example, Windsor does not allege that consumers were or are likely to purchase
23  MGF's products because they favorably associate them with the Monterey region of California,
    or because they believe that region produces outstanding pastas and sauces.  *See, e.g., Kraft*
24  *General Foods, Inc. v. BC-USA, Inc., supra*, 840 F.Supp. 344, 349-50 (E.D. Pa. 1993) (holding
    "Philadelphia" cream cheese not to be a geographically descriptive term); *see, also, Forschner*
25  *Group v. Arrow Trading Co.*, 30 F.3rd 348, 355 (2nd Cir. 1994).

26  [3]    Aside from the fact that the assertion is merely a conclusion of law, the mere fact "that a
    phrase or term *evokes* geographic associations does not, standing alone, support a finding of
27  geographical descriptiveness."  *Forschner Group v. Arrow Trading Co., supra*, 30 F.3rd 348, 355
    (2nd Cir. 1994); *Federal Treasury Enterprize Sojuzplodoimport v. Spirits Int'l N.V., supra*, 425
28  F.Supp.2nd 458, 469 (S.D.N.Y. 2006).  More must be alleged and proven.

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

1            3.    <u>No facts are alleged to plead fraudulent acts or intent.</u>

2       Looking to the ensuing allegations, we see that both Paragraphs 9 and 10 are

3 pleaded on information and belief, as was the case in *Kash N' Gold*.  Paragraph 9

4 asserts that on the basis of information and belief, the USPTO "was not made aware" of

5 the "geographically descriptive" (or alternately "misdescriptive") nature of the term

6 *Monterey Pasta Company*® during the application.[4]  Paragraph 10 alleges on

7 information and belief that "nothing in the file wrapper indicates" the USPTO was

8 informed of the same allegation.  *Kash N' Gold* and the cases it cites require that where

9 fraud allegations are made on information and belief, that "the allegations must be

10 accompanied by a statement of facts upon which the belief is founded."  1990 WL

11 196089, 2.  *What is the factual basis for Windsor's belief that the USPTO was not*

12 *informed of material facts about the term Monterey Pasta Company® during the*

13 *application?*  It can't simply be that the USPTO registered the mark (which Windsor

14 concludes is descriptive)!  There has to be some factual allegation of intentionally

15 deceptive acts on the part of the applicant.  "The party pleading fraud on the Patent and

16 Trademark Office must 'specify the statements that [it] contends were fraudulent' and

17 'explain why the statements were fraudulent.'"  *Federal Treasury Enterprize*

18 *Sojuzplodoimport v. Spirits Int'l N.V., supra,* 425 F.Supp.2nd 458, 468 (S.D.N.Y. 2006),

19 citing *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994).  But there are,

20 and can be, no specific facts alleged to meet these requirements.  We can only guess

21 what it was that MGF supposedly did that was fraudulent, and why.  That is because

22 there was no fraud.  Mere assumption that there was will not do.

23       At page 3 of its brief, Windsor tries to finesse the scienter requirement, urging that

24 it may be averred "generally."  But that is not the complete rule, as *Kash N' Gold* notes

---

25   [4]     Windsor does not even correctly analyze the mark.  The mark registered was not just

26 "Monterey," but rather a *composite* mark (*Monterey Pasta Company*®), "and its validity was not judged by an examination of its parts.  "Rather, the validity of a trademark is to be determined by

27 viewing the trademark as a whole."  *California Cooler, Inc. v. Loretto Winery, Ltd.,* 774 F.2nd 1451, 1455 (9th Cir. 1985).  *California Cooler* further observes, quoting McCarthy," a composite

28 geographical mark should not be dissected into its parts to determine whether it is primarily geographical or not."  *Id.*

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

5

1   Rather, "circumstances must be pleaded that provide a factual foundation for otherwise

2   conclusory allegations of scienter." 1990 WL 196089, 3, citing *Stern v. Leucadia*

3   *National Corp.,* 844 F.2nd 997, 1003 (2nd Cir. 1988); *Schlick v. Penn-Dixie Cement Corp.,*

4   507 F.2nd 374, 379 (2nd Cir. 1974) *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976 (1975). No

5   such circumstances have been pleaded to provide this foundation.

6          Windsor's opposition ignores another problem in its pleading as to the elements of

7   false statements and scienter, and that is there is no basis for any duty on MGF's part to

8   formulate or disclose to the USPTO an "opinion" as to whether the term *Monterey Pasta*

9   *Company*® was "descriptive," "geographically descriptive," or "geographically

10  misdescriptive." First, opinions, right or wrong, are not actionable in fraud, whether

11  disclosed or not. *InterPetrol Bermuda Ltd. v. Kaiser Aluminum Intern. Corp.,* 719 F.2nd

12  992, 996 (9th Cir. 1983). Second, *eCash Technologies, Inc. v. Guagliardo, supra,* 127

13  F.Supp.2nd 1069 (C.D. Cal. 2000), holds that absent clearly established facts or rights

14  contrary to a party's position in the registration process, there is no duty to investigate for

15  and disclose facts that might arguably potentially mitigate against the application. 127

16  F.Supp.2nd 1080. Borrowing from the Central District's logic in *eCash,* "it is not enough

17  that" the party urging fraud may be able to present an argument for descriptiveness;

18  "they must be able to show that" the descriptive nature of the mark was "so clearly

19  established that [the] failure to disclose [it] to the PTO would have to constitute fraud."

20  127 F.Supp.2nd 1080. Of course, if the allegedly descriptive nature of *Monterey Pasta*

21  *Company*® had been clearly established, the USPTO would have known about it and

22  could not have justifiably relied on any alleged nondisclosure.

23         Nor can Windsor get by with an allegation that MGF "should have known" that its

24  mark was "descriptive," particularly with a claim as amorphous as alleged

25  "descriptiveness." Representations and disclosures made to the USPTO that are not

26  fraudulently intended to deceive will not constitute grounds for cancellation, even if

27  inconsistent or even erroneous. And the Courts require clear and convincing evidence

28  of such fraudulent intent. *See, e.g., Gibson Guitar Corp. v. Paul Reed Smith Guitars,*

1     *LP,* 311 F.Supp.2nd 690, 718 (M.D.Tenn. 2004).

2        Put another way, Windsor's allegations do not allege facts, which if proven, would

3 demonstrate that MGF knew that this mark was "descriptive" or "misdescriptive," when it

4 prosecuted the application, which facts are a prerequisite to pleading fraud. *See, e.g.,*

5 *Hana Financial, Inc. v. Hana Bank,* 500 F.Supp.2nd 1228, 1236 (C.D.Cal. 2007), citing

6 *Intellimedia Sports, Inc. v. Intellimedia Corp.,* 43 U.S.P.Q.2nd 1203, 1207 (TTAB 1997).

7 And under these holdings, this means that Windsor's counterclaim also fails to allege

8 facts to support another requisite element, that MGF "willfully deceived the PTO by

9 failing to disclose [material facts], in an effort to obtain a registration to which it knew it

10 was not entitled." *Intellimedia, supra,* 43 U.S.P.Q.2nd 1208; *Hana Financial, supra,* 500

11 F.Supp.2nd 1237.  Brief review of Windsor's counterclaim confirms that no such facts are

12 alleged.  It did not happen.

13          4.    **Windsor merely assumes reliance and causation.**

14        Moving on to the element of reasonable reliance by the USPTO, there simply is

15 no factual allegation sufficient to sustain the claim.  The *assumption* that the USPTO

16 would not have granted a trademark in Paragraph 11 is complete conjecture.  It *assumes*

17 the USPTO was misled as to the true material facts, although it does not allege what the

18 true material facts were, why they were unknown to the USPTO or could not reasonably

19 have been known to it, or how MGF allegedly duped the USPTO as to the truth.

20 Moreover, it *assumes* that the USPTO did not have grounds it deemed sufficient for

21 registration of the mark, other than the unspecified fraud.  The allegation is essentially

22 Windsor's self-fulfilling prophesy, that the USPTO must have been defrauded, otherwise

23 it would not have registered *Monterey Pasta Company*®.  But a fraud claimant is

24 required to plead *facts* sufficient to establish that the harm suffered, issuance of a

25 registration *that would not have otherwise issued*, was a foreseeable consequence of

26 the misrepresentation. *Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.,* 801

27 F.2d 13, 20-21 (2d Cir.1986) (applying fraud elements in a commercial context).

28

1        **5.    On its face, Windsor's fraud claim is time-barred.**

2        There is yet a further reason why Windsor's counterclaim fails to state a claim for

3    relief.  That is because on its face, *and coupled with Windsor's judicial admission in its*

4    *opposition brief,* the counterclaim demonstrates that it is barred by the statute of

5    limitations.[5]  "A limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to

6    dismiss.  *Jablon v. Dean Witter & Co.,* 614 F.2nd 677, 682 (9th Cir.1980); *see Avco Corp.*

7    *v. Precision Air Parts, Inc.,* 676 F.2nd 494, 495 (11th Cir.1982), *cert. denied,* 459 U.S.

8    1037, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982).  A F.R.Civ.P. 12(b)(6) motion to dismiss

9    may raise the limitations defense when the statute's running is apparent on the

10    complaint's face.  *Jablon,* 614 F.2nd at 682."  *Bower v. Foster Farms Dairy,* 2007 WL

11    4258815, 3 (E.D.Cal. 2007).

12        Windsor avers that its counterclaim is brought pursuant to 15 U.S.C. § 1120

13    (Section 38 of the Lanham Act).  [Opposition Brief, 2:11-2:15.]  Since the Lanham Act

14    has no statute of limitations, the closest state statute is used.  McCarthy on Trademarks

15    and Unfair Competition ("McCarthy") § 31.85, citing *Official Airline Guides, Inc. v. Goss,*

16    6 F.3rd 1385, 1395 -96 (9th Cir.1993).  The *Official Airline Guides* case, like this one, was

17    a cancellation action brought pursuant to Section 38 of the Lanham Act.  The Ninth

18    Circuit squarely held that a counterclaim for cancellation pursuant to Section 38 *arises*

19    *on the date of the alleged fraud on the PTO,* the date "when [the applicant] procured the

20    registration by using allegedly false statements."  6 F.3rd 1396.  Applying Oregon state

21    law for the statute of limitations, the Ninth Circuit ruled that the claim was barred

22    because filed more than two years after the registration issued.

23        In our case, the registration that is the subject of the counterclaim was issued

24    January 30, 1996.  Applying California's statute of limitations, three years for fraud (Cal.

---

25   [5]    The well-established doctrine of judicial estoppel prevents a party from taking a position
26    in a legal proceeding, and thereafter assuming a contrary position.  *See, e.g., Davis v. Wakelee,*
    156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895); *New Hampshire v. Maine,* 532 U.S. 742,
27    749-51, 121 S.Ct. 1808, 1814-15 (2001); *Rissetto v. Plumbers and Steamfitters Local 343,* 94
    F.3rd 597, 600-601 (9th Cir. 1996) (judicial estoppel is intended to protect against litigants playing
28    "fast and loose" with the courts).

1    Code of Civ. Pro. § 338), Windsor could have brought a separate action against MGF on

2    January 30, 1996, when MGF procured the registration by using allegedly false

3    statements or nondisclosures. Instead, Windsor has waited until April 14, 2008, more

4    than twelve years after the cause of action accrued. This Court can properly dismiss as

5    time-barred Windsor's counterclaim under Section 38 of the Lanham Act. *Official Airline*

6    *Guides, supra,* 6 F.3rd 1395-96. It should do so *without leave to amend and with*

7    *prejudice,* where the claim is on its face time-barred, and no amendment can rescue the

8    claim from that bar.

9        **B.    Windsor's opposition seeks to hide the truth from this Court, truth
10              that is properly considered on a motion to dismiss, and truth that is
              fatal to Windsor's counterclaim on such a motion.**

11            **1.    The Court can properly consider judicially noticeable facts on
                    a motion to dismiss under FRCP Rule 12(b)(6).**
12

13       Windsor desperately seeks to hide the record from this Court. It even goes so far

14   as to question the authenticity of the trademark registrations for *Monterey Pasta*

15   *Company*® for which judicial notice is requested. [Opposition Brief, 4:14-25.] Windsor

16   also suggests that this Court cannot go beyond the pleadings, and that MGF's reference

17   to matters on judicial notice have converted this motion to dismiss into one for "summary

18   judgment," claiming this is "not the time" for this Court to determine the validity of its

19   counterclaim. [Opposition Brief, 4:5-4:12.] Begging Windsor's pardon, but *this motion to*

20   *dismiss is the time* for the Court to examine the counterclaim, and to determine its

21   validity as a pleading.

22       As shown in the analysis above, the counterclaim is not sufficient to plead fraud.

23   But this truth is brought home even further, when the entire record is considered.

24   Contrary to Windsor's suggestion, this is not a summary judgment motion, but a motion

25   to dismiss under FRCP Rule 12(b)(6). Also contrary to Windsor's suggestion, on a

26   motion to dismiss, the Court is not confined to the pleadings, but may also consider

27   matters that are properly the subject of judicial notice. *Gay-Straight Alliance Network v.*

28   *Visalia Unified School Dist.,* 262 F.Supp.2nd 1088, 1099 (E.D.Cal. 2001); *See, also,*

1    *Branch v. Tunnell,* 14 F.3rd 449, 453-54 (9th Cir. 1994), *overruled on other grounds by*

2    *Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002); *United States v.*

3    *Ritchie,* 342 F.3rd 903, 907-8 (9th Cir. 2003).

4          2.     <u>There is no requirement for certified copies of registrations.</u>

5          Windsor objects to the Court's consideration of copies of MGF's trademark

6    registrations for *Monterey Pasta Company®* (Items 1-4, RJN), even though these copies

7    came straight from the USPTO's electronic tracking system.  It infers that *Metro Pub.,*

8    *Ltd. v. San Jose Mercury News,* 987 F.2nd 637, 640-41 (9th Cir. 1993), requires certified

9    copies of the registrations.  [Opposition Brief, 4:14-4:24.]  But *Metro Publishing* simply

10   says that certified copies are sufficient.  It does not say certification is required.  Subpart

11   (c) of FRCP Rule 44 allows a party to prove an official record by any method authorized

12   by law.  The trademark registrations state on their face that they are published by the

13   "United States Patent and Trademark Office" on its "Trademark Principal Register."  That

14   in itself is sufficient to establish the registrations as authentic.  *See, e.g., California Ass'n*

15   *of Bioanalysts v. Rank,* 577 F.Supp. 1342, 1356 (C.D.Cal. 1983).

16         "The authenticity of an official document is sufficiently established when a copy of

17   it is offered which purports to have been printed by authority of the Government."  5

18   Louisell & Mueller, *Federal Evidence,* § 533 at 208-09 (1981). )  "A document that on its

19   face appears to be an official publication comes under this provision of the rule [Rule

20   44(a)(1) ] unless the party opposing its admission into evidence shows that it is not in

21   fact an official publication."  9 Wright and Miller, *Federal Practice and Procedure,* § 2433

22   at 388 (1971).  Windsor has not in any way demonstrated that these registrations are

23   forgeries.  It cannot, since they come right off the PTO's website.  An official document

24   can be considered authentic when its content, when considered with the circumstances,

25   is of such a nature that it is unlikely that the reports were prepared by an individual or

26   entity other than the government entity purporting to publish it. *See, e.g., California Ass'n*

27   *of Bioanalysts v. Rank, supra,* 577 F.Supp. 1342, 1356 (C.D.Cal. 1983), citing *Alexander*

28   *Dawson, Inc. v. National Labor Relations Board,* 586 F.2d 1300, 1302 (9th Cir.1978).

1    Nevertheless, to satisfy Windsor that MGF has not substituted forgeries for the

2    registrations and to ensure the Court's consideration, MGF is submitting with this

3    Memorandum a Declaration that authenticates these registrations (as well as the other

4    documents for which judicial notice is requested). [See Declaration of Kathryn J. Allen.]

5    Such authentication is recognized under Rule 901(b)(1) of the Federal Rules of

6    Evidence. Thus, the registrations and other documents on file with the USPTO are

7    properly before this Court.

8         3.     **The Court may also take judicial notice of other documents relevant to prove or disprove relevant subjects, such as incontestability, full**

9                 **disclosure to the PTO, and lack of geographical descriptiveness or**

10                **misdescriptiveness.**

11   Windsor then takes exception to MGF's request for judicial notice of numerous

12   other publicly available documents and publications whose authenticity is not subject to

13   question. These documents, most of which are readily accessible over the internet, are

14   self-authenticating under Rule 901(b)(4), and the authorities cited above. This is

15   especially the case where Windsor, the "party opposing . . . admission into evidence,"

16   has not shown anything to the contrary. *See, e.g.,* 9 Wright and Miller, *supra, Federal*

17   *Practice and Procedure,* § 2433 at 388 (1971). Moreover, they are authenticated by

18   Declaration, to satisfy any concerns. FRE Rule 901(b)(1).

19   Realizing that the Court can take judicial notice of these materials, Windsor next

20   attacks their relevance. First, it criticizes the numerous dictionaries and web pages (*see,*

21   *e.g.,* Items 10-19, RJN) that demonstrate that there is no connection between Monterey,

22   California and pasta products. [Opposition Brief, 5:3-5:10.] Of course, that

23   demonstration is directly relevant to disprove the conclusory allegations in Paragraphs 8

24   through 10 of the counterclaim that the term *Monterey Pasta Company*® is

25   "geographically descriptive," and that MGF allegedly failed to disclose that alleged

26   conclusion to the USPTO. *See, e.g., Kraft General Foods, Inc. v. BC-USA, Inc., supra,*

27   840 F.Supp. 344, 349-50 (E.D. Pa. 1993); *Forschner Group v. Arrow Trading Co., supra,*

28   30 F.3rd 348, 355 (2nd Cir. 1994). Windsor says that this proves that the mark has no

11

1   secondary meaning.  First, it proves just the opposite, that it has meaning other than

2   geographic.  Second, it is way too late in the day for Windsor to request cancellation of

3   an incontestable mark on the grounds that it lacks secondary meaning.  That ground is

4   gone.

5          Windsor then seeks to shunt to the side the problem of incontestability, revealing

6   the strategy wherein it devised its fraud claim.[6]  It emphatically points out that its

7   counterclaim is based on fraud on the USPTO, and that such fraud is an exception to

8   incontestability.  [Opposition Brief, 5:26-6:8.]  But that is not MGF's "primary" argument,

9   or MGF's argument at all.  MGF's argument, one supported by case law, is that once its

10   registration for *Monterey Pasta Company*® became incontestable, the mark could never

11   be challenged for alleged descriptiveness, geographic descriptiveness, or geographic

12   misdescriptiveness.  *See, e.g.,* Hawes & Dwight, *Trademark Registration Practice,*

13   *supra,* § 16.6, pp. 16-11, 16-12 (Thomson/West 2007); TBMP, *supra,* §§ 307.02,

14   309.03(c).  The courts will not let a party assert a petition for cancellation on grounds

15   barred by incontestability, under the guise of a ground not so barred.  *See, e.g., Imperial*

16   *Tobacco Ltd., Assignee of Imperial Group PLC v. Philip Morris, Inc., supra,* 899 F.2d

17   1575, 1580 (Fed. Cir.1990), citing *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.,*

18   *supra,* 680 F.2d 755, 765-66 (Cust. & Pat. App. 1982).  *That is MGF's argument,* that

19   Windsor is using a factually unsubstantiated and conclusory claim of fraud as an

20   improper back-door way to now reargue its lost claims of alleged descriptiveness,

21   geographic descriptiveness, or geographic misdescriptiveness.[7]  Windsor simply ignores

22   that argument and those authorities, because the only way it can manufacture a counter-

23   claim is to fabricate a fraud claim making those very back-door arguments.  As in

24   *Imperial Tobacco Ltd., Assignee of Imperial Group PLC v. Philip Morris, Inc., supra,* 899

---

25   [6]    Apparently, Windsor does not object to judicial notice of MGF's Combined Declaration of
26   Use & Incontestability filed with the USPTO on November 13, 2001 for Registration No.
1,953,489, the mark in question.  [Item 8, RJN.]  It has filed no objection to such request, which
establishes the mark's incontestability on grounds of descriptiveness.

27   [7]    One need only read Page 5 of the Opposition Brief to appreciate the fact that Windsor's
28   entire cancellation counterclaim is a belated effort to reargue that *Monterey Pasta Company*® "is
merely geographically descriptive."  [Opposition Brief, 5:9.]

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

1    F.2d 1575, 1580 (Fed. Cir.1990), this Court should not permit it to do so.

2

3                              IV.    CONCLUSION

4          Even if the Court does not take judicial notice of the records of the USPTO,

5    Windsor's counterclaim should be dismissed (and without leave to amend), because it

6    does not come close to stating facts sufficient to establish all of the requisite elements of

7    a claim for fraud on the USPTO, and because on its face, and by Windsor's own judicial

8    admission, the counterclaim was long ago barred by the statute of limitations.

9          But if the Court takes judicial notice of the very records that Windsor tells us it

10   could not find in the file wrapper (¶ 10, Counterclaim), the record is overwhelming to

11   affirmatively establish that no fraud was practiced on the USPTO, and the USPTO was

12   fully aware of the presence of MGF within Monterey County, and the lack of any

13   geographic connection (goods-place association) between pasta and sauce products

14   and that area.  That is why Windsor pretends that judicial notice would be inappropriate,

15   hoping that the Court cannot reach the merits of its meager allegations on a motion to

16   dismiss!  But that is the very reason why Courts can and should take judicial notice of

17   reasonably reliable recorded facts on motions to dismiss -- to reach the merits and rid

18   their calendars of sham pleadings.  *See, e.g., Mack v. South Bay Beer Distributors, Inc.,*

19   798 F.2nd 1279, 1282 (9th Cir. 1986) (the purpose of taking judicial notice of

20   administrative records is to permit the court to look beyond the allegations of a claim to

21   rule on the merits without converting a motion to dismiss into one for summary

22   judgment).  Resort to the public administrative records of the USPTO reveals Windsor's

23   fraud counterclaim to be what it is, a sham.

24         For all of these reasons, it is respectfully submitted that it is well within this Court's

25   power to grant MGF's motion to dismiss with prejudice, and without leave to amend.

26   *See, e.g., In re Vantive Corp. Securities Litigation,* 283 F.3rd 1079, 1097-98 (9th Cir.

27   2002); *In re Read-Rite Corp.,* 335 F.3rd 843, 845 (9th Cir. 2003).  There was no fraud

28   committed on the USPTO, and Windsor has no factual basis to assert any, as evidenced

SHAPIRO BUCHMAN
PROVINE & PATTON LLP
ATTORNEYS AT LAW
WALNUT CREEK

                                        13

1    by both its own pleadings, and the administrative record.

2          Dated:  June 5, 2008

3                         Respectfully Submitted,

4                         SHAPIRO BUCHMAN PROVINE & PATTON LLP

5

6                         By:_____/s/_____

7                              John H. Patton, Cal. SBN 069261
                        Attorneys for Plaintiff and Counterdefendant

8                         Monterey Gourmet Foods, Inc.

9

10

11

12

13
   209062.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28